UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ARNOLD SCHANFIELD, individually and on
behalf of others similarly situated,         :

                                             :

                                             :   No. 07 Civ. 9716 (CM) (JCF)

                 Plaintiff,                  :

                                             :   AMENDED

         - against -                         :   CLASS ACTION
                                             :   COMPLAINT
SOJITZ CORPORATION OF AMERICA; JUN           :
MATSUMOTO in his official and individual     :
capacities; and TAKASHI TSUKADA in his       :
official and individual capacities,          :

                                             :   Jury Trial

                 Defendants.                 :   Demanded

                                             :

-------------------------------------------------------------X

Plaintiff Arnold Schanfield, on behalf of himself and all similarly situated persons, by his

attorneys Thompson Wigdor & Gilly LLP, as and for his Class Action Complaint, hereby alleges

as follows:

## NATURE OF THE CLAIM

1.      Plaintiff brings this action to challenge a pattern and practice of race and

national origin discrimination and retaliation committed by Sojitz Corporation of America

("Sojitz" or "the Company") against current and former non-Japanese/non-Asian employees.

The violations are systemic in nature, and constitute a pattern and practice of conduct which for

many years has and continues to permeate the Company.  The employment policies and practices

of Sojitz have the effect and have been undertaken with the purpose of denying promotional and

management opportunities, equal compensation, and equal terms and conditions of employment

to qualified non-Japanese/non-Asian employees.

2.      This class action therefore seeks declaratory, injunctive and equitable relief, as

well as monetary damages, to redress Defendants' unlawful employment practices, including

Defendants' discriminatory treatment against Plaintiff and similarly situated persons due to their Race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") with respect to Race.[1]

3.      Furthermore, Plaintiff asserts claims herein on his own behalf under Section 1981 against Defendants Jun Matsumoto ("Matsumoto") and Takashi Tsukada ("Tsukada") (collectively the "Individual Defendants") and under the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"), New York Administrative Code §§ 8-101 et seq. against Sojitz and the Individual Defendants (collectively "Defendants") because Defendants engaged in numerous acts which, inter alia, constituted a continuous pattern and practice of discrimination and retaliation based upon Plaintiff's Race and/or National Origin.

### JURISDICTION AND VENUE

4.      The Court has jurisdiction over Plaintiff's class-wide claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of civil rights under Section 1981. The Court has supplemental jurisdiction over Plaintiff's related individual claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c). Sojitz's principal place of business is located in the Southern District of New York and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

---

[1] These class claims are currently alleged on the basis of race alone. When the Complaint is amended at the conclusion of the EEOC's investigation to add Title VII claims, class-wide allegations on the basis of national origin will be added.

## ADMINISTRATIVE PROCEDURES

6.      On or about October 12, 2007, Plaintiff filed a class-based charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") against him and similarly situated employees and former employees.  The charge arises out of the same facts alleged herein.

7.      When the EEOC completes its investigation of the charge and issues Plaintiff notice of right to sue, Plaintiff will be seeking leave to amend this Complaint to add claims on his own behalf and on behalf of all similarly situated individuals that Defendants violated Title VII as well.

8.      Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

9.      Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

10.     Plaintiff Arnold Schanfield, a former Chief Internal Auditor at the Company, is a Caucasian/American male who resides in Fort Lee, New Jersey.  At all relevant times, Mr. Schanfield was an employee of Sojitz in its New York office.

11.     Defendant Sojitz is the successor to Nissho Iwai American Corporation and Nichimen America Corporation and is a New York corporation with a principal place of business located at 1211 Avenue of the Americas, New York, New York 10036.  Sojitz is the United States subsidiary of Sojitz Corporation, an international trading company based in Japan.  Sojitz manages the activities of the machinery, energy and mineral resources, chemical and plastics,

3

and consumer products operations in the U.S., Canada, Mexico, Central and South America. During the relevant time period, Sojitz met the definition of "employer" under all relevant statutes.

## DISCRIMINATORY PRACTICES

12.     As set forth more fully below, non-Japanese/non-Asian employees at Sojitz are routinely subjected to a pattern and practice of race and/or national origin discrimination affecting their terms and conditions of employment at Sojitz. These practices reflect that discrimination is the standard operating procedure – the regular, rather than the unusual, practice at Sojitz. As a result of this Company-wide discrimination, non-Japanese/ non-Asian employees are denied equal promotional and management opportunities and are further denied equal treatment with respect to compensation and other terms and conditions of employment.

**A.     Challenged Practices**

13.     One of the central elements of the pervasive discrimination at Sojitz is the Company's use of and favorable treatment towards "rotational staff." The rotational staff are employees of Sojitz sent from the Japanese parent company to work for Sojitz in the U.S. usually for a term of three to five years. Rotational employees are exclusively Japanese/Asian. Distinguished from these rotational employees are the "national staff" – employees hired in the U.S. for indefinite employment. National staff are predominantly American and Caucasian.

14.     Sojitz has a strict policy requiring that the top positions at the Company be filled by the all Japanese/Asian rotational staff. In fact, upon information and belief, non-Japanese/non-Asian employees or applicants, regardless of how well qualified cannot apply and are never even considered for these positions. This widespread practice institutes two different, and unequal, promotional and advancement tracks on the basis of race/national origin without

4

regard to comparative ability or actual business needs. As a result, non-Japanese/non-Asian employees are denied equal promotional opportunity to and participation in management.

15.    In addition to this strict exclusionary policy regarding top positions, Sojitz's other policies and practices further exclude non-Japanese/non-Asian employees from management opportunities. For example, non-Japanese/non-Asian employees are consistently excluded from key management meetings and decisions, and Sojitz routinely maintains important Company documents, such as business plans, in Japanese, without translating these into English. Non-Japanese/non-Asians are similarly excluded from nearly all internal networking opportunities with top executives and are thereby deprived of key opportunities to connect with the promotional decision-makers. Finally, even the few national staff, such as Plaintiff, who are given managerial titles suffer discrimination in management opportunities because Sojitz systematically denies them meaningful roles or authority appropriate to their positions.

16.    In addition to this exclusion from management, Sojitz's company-wide rotational system also discriminates against non-Japanese/non-Asians with respect to pay. First, the Japanese/Asian rotational staff are paid significantly more compensation than their national staff counterparts simply as a result of being placed at the highest levels of the Company. This effect is exacerbated by Sojitz's practice of compensating the Japanese/Asian rotational staff according to a different, more lucrative, system than the national staff. This separate formula for calculating the salary and bonus for rotational staff provides this all Japanese/Asian group with significantly higher overall compensation than their non-Japanese/non-Asian employees. This compensation practice is implemented throughout Sojitz without respect to merit or

qualifications or any analysis of whether local candidates could be hired or the Japanese/Asian expatriates could be compensated at local market rates.

17.    Sojitz also has a policy of applying different, more lenient, standards for employee conduct and discipline to its all Japanese/Asian rotational staff. Non-Japanese/non-Asian employees are held to stricter standards and, consequently are disciplined, formally and informally, more frequently and severely than their Japanese/Asian counterparts.

18.    In addition to the above-described discrimination caused by the rotational staff system, standard Company practices and policies applicable to the <u>national staff</u> also result in discrimination against non-Japanese/non-Asian employees. Specifically, Sojitz has a policy and practice of giving its management employees – who are predominantly Japanese/Asian - subjective decision-making authority over the promotion, compensation and disciplinary decisions for national staff -- who are predominantly non-Japanese and non-Asian. The lack of standard, objective criteria for personnel-related decisions regarding national staff allows for the incorporation of the subjective stereotypes and biases of the overwhelmingly Japanese/Asian management into the Company's personnel decisions. As a result, non-Japanese/non-Asian employees are significantly underrepresented in management, are paid far less, and receive stricter discipline and less favorable performance assessments than similarly situated Japanese/Asian colleagues.

19.    This Company-wide discrimination against non-Japanese/non-Asian employees is maintained and enforced by Sojitz's uniform response toward any employee who challenges or complains of the wrongful treatment. Staff who complain either internally or externally about Sojitz's treatment of non-Japanese/non-Asian employees are retaliated against by the Company, <u>inter alia</u>, blocking such employee's advancement, undermining his/her position and in many

cases by terminating the employee, either explicitly or constructively. Sojitz's policy and practice of retaliating against employees who report or complain of discrimination, by discipline, termination and other adverse actions, is pervasive and Company-wide. It is also facilitated by Sojitz's general policy of entrusting the predominantly Japanese/Asian management with discretion in the discharge of their duties, which affords them the unfettered opportunity to apply their own personal preferences and biases in making employment decisions. As a result, qualified non-Japanese/non-Asian employees have been adversely affected by a consistent pattern and practice of unlawful retaliation.

20. Thus, Sojitz discriminates against non-Japanese/non-Asian employees with respect to hiring, termination, promotion and management opportunities by: (a) a policy of appointing rotational staff employees, who are all Japanese/Asian, to the top management positions at the Company, (b) a policy of denying non-Japanese/non-Asian employees access to the Company's management or to important company information, (c) relying on subjective judgments, procedures and criteria which permit and encourage the incorporation of the stereotypes and bias held by the predominantly Japanese/Asian management in making hiring, termination, promotion and other employment decisions, (d) using informal subjective selection and evaluation methods which otherwise allow for discrimination, (e) refusing or failing to provide non-Japanese/non-Asian employees with opportunities to demonstrate their qualifications, (f) providing Japanese/Asian individuals greater latitude and authority in performing their job duties for management positions and promotional opportunities than similarly situated non-Japanese/non-Asian individuals, and (g) generally by awarding management positions to Japanese/Asian individuals with lesser qualifications than similarly situated non-Japanese/non-Asian individuals.

21.     Sojitz discriminates against non-Japanese/non-Asian employees with respect to pay by: (a) a policy of exclusively placing rotational staff, who are all Japanese/Asian, into high-level positions, (b) paying the rotational staff on a different and far more lucrative scale than national staff employees, (c) vesting final approval of compensation for national staff with Sojitz's all Japanese/Asian rotational executives, (e) relying on subjective judgments, procedures and criteria which permit and encourage the incorporation of the subjective stereotypes and biases held by the predominantly Japanese/Asian management in making compensation decisions, (f) using informal subjective compensation methods which otherwise allow for discrimination, and (g) generally by awarding greater compensation to Japanese/Asian individuals with lesser qualifications than similarly situated non-Japanese/non-Asian individuals.

22.     Sojitz discriminates against non-Japanese/non-Asian employees with respect to discipline by: (a) applying standards and disciplinary policies and procedures to the Japanese/Asian rotational staff that are different from, and more lenient than, the standards and policies applied to national staff, (b) applying far less severe discipline to Japanese/Asian employees than that applied to non-Japanese/non-Asian employees, (c) relying on subjective judgments, procedures and criteria for employee discipline which permit and encourage the incorporation of the stereotypes and biases held by Sojitz's predominantly Japanese/Asian management in making disciplinary decisions, (d) using informal subjective criteria in discipline which otherwise allows for discrimination, and (e) generally disciplining non-Japanese/non-Asian employees with more severe results for less serious infractions than the Japanese/Asian employees.

23.     Sojitz retaliates against non-Japanese/non-Asian employees who report or protest discriminatory conduct by: (a) a policy and practice of retaliating against the national

staff for any complaints about Sojitz's treatment of non-Japanese/non-Asian employees, (b)
vesting subjective discretion in the Japanese/Asian management executives with respect to the
discharge of their duties, (c) relying on subjective judgments, procedures and criteria in making
employment decisions which permit and encourage the incorporation of the stereotypes and
biases held by Sojitz's predominantly Japanese/Asian management in making disciplinary and
termination decisions, and (d) generally by retaliating against employees who report or complain
of discrimination.

24.    The above-described discrimination and retaliation is motivated by
discriminatory animus against non-Japanese/non-Asians or an intent to retaliate against those
who engage in protected conduct respectively. Upon information and belief, the all
Japanese/Asian management at Sojitz, particularly the rotational staff, hold stereotyped views of
non-Japanese/non-Asian employees which has resulted in a pattern and practice of
discrimination with respect to promotion and management opportunities, compensation,
discipline and retaliation of national staff.

25.    Alternatively, Sojitz maintains common, company-wide policies identified
above that have a disparate impact on non-Japanese/non-Asian employees at Sojitz, yet there is
no legitimate business purpose for their use.

**B.    Patterns of Disparate Treatment and Impact**

26.    Upon information and belief, the above cited discriminatory practices have
resulted in patterns of discriminatory disparate treatment and/or disparate impact toward the non-
Japanese/non-Asian employees of Sojitz.

27.    Throughout the liability period, a disproportionately large percentage of the
managers and supervisors at Sojitz have been Japanese/Asian. For example, on or about October

18, 2006, Plaintiff reported to Sojitz executives that there was a clear absence of national staff at the management level resulting in an imbalance between Japanese/Asian rotational employees in management positions and non-Japanese/non-Asian national staff employees in lower level positions.

28.     As a further example, during the course of Mr. Schanfield's employment at Sojitz, he was one of only three non-Japanese/non-Asian individuals employed as heads of a department.  No non-Japanese/non-Asian individuals could be found in high-level positions other than in administrative areas.

29.     In fact, according to a November 2006 publicly filed discrimination complaint brought by Sojitz's former Senior Vice President and General Counsel, as of April 1, 2004, there were no non-Japanese/non-Asian employees holding the title of Senior Vice President.  Upon information and belief, this disparity continues to this day.

30.     Throughout the liability period, Japanese/Asian employees also received disproportionately greater compensation than comparably situated non-Japanese/non-Asian employees.

31.     Throughout the liability period, non-Japanese/non-Asian employees were also disciplined, formally and informally, more frequently and severely than the Japanese/Asian rotational employees.

32.     Throughout the liability period, national staff were systematically retaliated against for complaining about Sojitz's discriminatory treatment of non-Japanese/non-Asian employees.

## CLASS ACTION ALLEGATIONS

### A.    Class Definition

33.    Plaintiff requests that the Court certify a class consisting of all current and
former non-Asian[2] employees who have been employed by Defendant Sojitz at anytime between
October 1, 2004 and the present. Plaintiff reserves the right to amend the definition of the Class
following the conclusion of the EEOC's investigation and/or discovery.

### B.    Efficiency of Class Prosecution of Common Claims

34.    Certification of a class of non-Asian employees is the most efficient and
economical means of resolving the questions of law and fact which are common to Plaintiff's
claims and the proposed claims of the class. Plaintiff's individual claims require resolution of
the common question of whether Sojitz has engaged in a systemic pattern and/or practice of
racial discrimination. Plaintiff has standing to seek such relief because of the adverse effect that
such discrimination has had on him individually and on non-Asian employees generally.
Without class certification, the same evidence and issues would be subject to re-litigation in a
multitude of individual lawsuits with an attendant risk of inconsistent adjudications and
conflicting obligations. Certification of the proposed class is the most efficient and judicious
means of presenting the evidence and arguments necessary to resolve such questions for
Plaintiff, the proposed class and Sojitz.

### C.    Numerosity and Impracticability of Joinder

35.    The class members are sufficiently numerous to make joinder of all members
impracticable. While the exact number of Class members is unknown at this time, upon
information and belief, Sojitz employs and employed during the pertinent period more than 400

---

[2] These class claims are currently alleged on the basis of race alone. When the Complaint is amended at the
conclusion of the EEOC's investigation to add Title VII claims, class-wide allegations on the basis of national origin
will be added.

non-Asian employees. Although the number of Class members is incapable of precise determination at this time, it is significant and satisfies the numerosity requirement of Rule 23.

**D.    Common Questions of Law and Fact**

36.    The claims alleged on behalf of Plaintiff raise questions of law or fact common to the class. The common questions of law include inter alia whether Sojitz has engaged in unlawful systemic race discrimination with respect to its promotional, hiring, termination, and management opportunities, compensation and discipline policies, practices and/or procedures, and in the general terms and conditions of work and employment, and whether Sojitz has engaged in unlawful systemic retaliation against employees who report or complain of discriminatory treatment. The common questions of fact include, inter alia: whether, through its policies, practices and/or procedures: (a) Sojitz has denied or prevented the hire or promotion of non-Asian employees; (b) Sojitz has denied non-Asian employees equal access in top management; (c) Sojitz has paid non-Asian employees less than comparably situated Asian employees; (d) Sojitz has subjected non-Asian employees to differential treatment, including stricter discipline; (e) Sojitz has retaliated against non-Asian employees who have protested discrimination; and (f) Sojitz's policies and procedures have had a disparate impact on non-Asian employees.

37.    The employment policies, practices and/or procedures to which Plaintiff and the class members are subject are established at Sojitz's corporate level and apply universally to all class members throughout the country. These employment policies, practices and/or procedures are not unique or limited to any department; rather, they apply to all departments, and thus, affect Plaintiff and proposed class members no matter the position in which they work.

**E.    Typicality of Claims and Relief Sought**

38.    Plaintiff is a member of the Class he seeks to represent.  Plaintiff's claims are typical of the claims of the proposed class.  Plaintiff asserts claims in each of the categories of claims he asserts on behalf of the proposed class.  The relief Plaintiff seeks for the discrimination complained of herein is also typical of the relief which is sought on behalf of the proposed class.

**F.    Adequacy of Representation**

39.    Plaintiff's interests are co-extensive with those of the members of the proposed class of non-Asian employees that he seeks to represent in this case.  Plaintiff is willing and able to represent the proposed class fairly and vigorously as they pursue their similar individual claims in this action.  Plaintiff has retained counsel who are qualified, experienced and able to conduct this litigation and to meet the time and fiscal demands to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience and resources of Plaintiff and his counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4).

**G.    Requirements of Rule 23(b)(2)**

40.    Sojitz has acted on grounds generally applicable to Plaintiff and the proposed class by adopting and following systemic policies, practices and/or procedures which are discriminatory on the basis of race.  This discrimination is reflective of the discriminatory atmosphere that drives Sojitz's standard operating procedures.  Sojitz has refused to act on grounds generally applicable to the class by inter alia: (a) refusing to adopt and apply promotion, management, compensation and discipline policies, practices and/or procedures which do not have a disparate impact on, or otherwise systemically discriminate against non-Asian employees

and (b) refusing to provide equal terms and conditions of employment for non-Asian employees. Sojitz's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

41.    Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of Sojitz's individual and class-wide liability and the essential predicate for Plaintiff's and the class members' entitlement to monetary and non-monetary remedies to be determined at a later stage of the proceedings. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic discrimination against non-Asian employees at Sojitz. Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and for exemplary purposes, necessitated by such systemic discrimination.

**H.    Requirements of Rule 23(b)(3)**

42.    The common issues of fact and law affecting Plaintiff's claims and those of the proposed class members, including, but not limited to, the common issues identified above, predominate over any issues affecting only individual claims.

43.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the members of the proposed class.

44.    The cost of proving Sojitz's pattern and practice of discrimination makes it impracticable for Plaintiff and members of the proposed class to pursue their claims individually.

## PLAINTIFF'S ALLEGATIONS

### Arnold Schanfield's Career at Sojitz

45.     On July 10, 2006, Mr. Schanfield began working at Sojitz as Chief Internal Auditor.  Throughout the course of employment at Sojitz, Mr. Schanfield was well-qualified for the position and performed his duties in a professional and highly capable manner.  His excellent performance included conducting an extensive Company-wide risk assessment and producing the highest quality analysis and reports of his results.  This accomplishment was particularly important for Sojitz which previously had no internal audit function addressed to U.S. standards.

### Unequal Promotion and Management Opportunities Based on Race/National Origin

46.     As set forth above, the policy of placing only the Japanese/Asian rotational staff into the top management positions at the Company excludes non-Japanese/non-Asians from promotional and management opportunities.  As a result, the highest levels of management at Sojitz are disproportionately Japanese/Asian.  Moreover, even those few national staff employees, such as Plaintiff, who are given a management title, are nonetheless deprived of any real or meaningful management authority.  These policies are all part of the Company-wide discriminatory practice of preventing non-Japanese/non-Asians from participating in the upper echelons of management at Sojitz.

47.     Mr. Schanfield held the title of "Chief Internal Auditor," and, in the capacity, he suffered from this pattern and practice of discrimination at Sojitz.  The effect of these discriminatory practices was to deny Mr. Schanfield the true authority and status of Chief Internal Auditor and ultimately led to his termination.

48.     By way of example only, on or about August 8, 2006, a Japanese/Asian rotational employee, Akita Hisashi, was selected by Sojitz's Chief Financial Officer, Tsukada, as

Plaintiff's "counterpart." Despite the fact that Mr. Hisashi was technically Plaintiff's

subordinate, Mr. Hisashi "shadowed" Mr. Schanfield to monitor Mr. Schanfield's performance

and compliance with Tokyo auditing standards. Indeed, at the time, Plaintiff had extensive

experience in auditing over a period of 25 years with the resulting professional certifications,

while Mr. Hisashi's auditing experience was far more limited, with no professional certifications.

Although Mr. Hisashi was less-qualified and had significantly less experience in the internal

audit profession than Plaintiff, he was placed in a position of oversight with respect to Plaintiff.

This distinctly undermined Plaintiff's position and authority and denied him the true status and

responsibility of a Chief Internal Auditor.

49.     Similarly, although a Chief Internal Auditor should have the major leadership

role in setting audit standards, the Japanese/Asian management at Sojitz refused to allow Mr.

Schanfield this authority or grant him these high-level job responsibilities. Instead, Sojitz

management pressured Mr. Schanfield to audit the "Tokyo way," an illogical, rules-based

approach that was in conflict with the principles-based approach of the International Standards

for the Practice of Internal Auditing.

50.     When Plaintiff persevered and attempted to carry out his responsibilities as

Chief Internal Auditor, he was simply ignored and denied the feedback and resources to continue

to perform his job duties. For example, Mr. Schanfield sent more than 25 e-mails to top

rotational executives concerning his work. He received little in the way of meaningful responses

with the only thing of significance coming to him from the Chief Legal Officer (a

Caucasian/American). Plaintiff's numerous attempts to communicate with top management

went unacknowledged despite needing their approval to proceed. Such conduct prevented

Plaintiff from performing his duties effectively and deprived Plaintiff of his authority and true responsibilities of a Chief Internal Auditor.

51.    Similarly, Mr. Schanfield's attempts to communicate with Defendant Matsumoto, the Chief Executive Officer, and Defendant Tsukada, the Chief Financial Officer, were also met with indifference. Defendant Matsumoto repeatedly ignored Plaintiff's efforts to address important risk issues that were integral to his job. To make matters worse, Defendant Tsukada assured Plaintiff that he was keeping Defendant Matsumoto apprised of the work that Plaintiff was performing, but Plaintiff later discovered that that was not the case. In addition, Plaintiff's reports to Defendant Tsukada about serious issues and risks Plaintiff uncovered while visiting Sojitz branch offices in Houston, Los Angeles, Detroit, Bellevue, Seattle, Portland and New York were ignored.

52.    Furthermore, Sojitz failed to provide Plaintiff with the necessary resources and support to perform his job duties. Despite Sojitz's initial false representations that the Company had an Audit Committee made to induce Plaintiff to accept employment, and its subsequent representations that one would be created, this did not happen. Such a committee would have served to increase Plaintiff's role and influence at the Company and offer top-level support for his function and duties. Similarly, when Plaintiff began work at Sojitz, Defendant Matsumoto assured Mr. Schanfield that a training session would be organized specifically for him. Mr. Schanfield, however, never received any type of training while he was employed at Sojitz.

53.    Mr. Schanfield was also consistently excluded from important meetings with Company executives to which Japanese/Asian employees, even those of lower title than Mr. Schanfield, were invited. By way of example only, on or about November 29, 2006, Defendants did not invite Plaintiff to participate in a video-conference with Sojitz's parent company in Japan

17

regarding the audit policy at Sojitz. Schanfield was similarly denied important networking opportunities with top Sojitz executives. For example, while Defendant Matsumoto routinely invited Japanese/Asian employees at Mr. Schanfield's level and those below him to lunch, Plaintiff, despite his title, was never once extended an invitation.

54.    Mr. Schanfield was similarly disadvantaged by the fact that Japanese was used to communicate, orally and in writing, throughout the day by top Sojitz executives as well as with/by their underlings. This practice was rampant, notwithstanding the fact that non-Japanese/non-Asian employees would not be able to understand, leading to greater isolation and exclusion of non-Japanese/non-Asian employees. Even Defendant Matsumoto, who announced that English needed to be used at Sojitz when communicating, almost always spoke in Japanese.

55.    Thus, as set forth above, as an employee at Sojitz during the relevant time period, Mr. Schanfield has suffered from the Company-wide pattern and practice of discrimination in management opportunities against non-Japanese/non-Asians.

56.    In addition, or alternatively to the above-described disparate treatment, Mr. Schanfield suffered the disparate impact of Sojitz's policies of: (a) appointing the Japanese/Asian rotational staff to the Company's top management positions without regard to qualifications or merit; (b) vesting subjective discretion in the predominantly Japanese/Asian management with respect to decisions affecting the terms and conditions of national staff employment; (c) using informal subjective methods for personnel decisions and management opportunities which otherwise allow for discrimination; (d) refusing or failing to provide non-Japanese/non-Asian employees with opportunities to demonstrate their qualifications; and (e) providing Japanese/Asian individuals greater latitude and authority in performing their job duties than similarly situated non-Japanese/non-Asian individuals.

**Unequal Pay Based on Race/National Origin**

57.    In addition to the above-described discrimination with respect to management opportunities, during Plaintiff's employment at Sojitz, he was further subjected to unequal compensation as compared to his Japanese/Asian colleagues. Mr. Schanfield's experience was part of Sojitz's pattern and practice of discrimination against non-Asian/non-Japanese employees that exists Company-wide.

58.    Upon information and belief, Plaintiff's compensation at Sojitz has been significantly lower than the Asian/Japanese rotational executives who have considerably less experience and qualifications. As just one example, Sojitz did not award Plaintiff any incentive compensation. Meanwhile, Plaintiff's Japanese/Asian counterparts were eligible for regular, as well as special, incentive compensation. Upon information and belief, Defendants Matsumoto and Tsukada directly participated in all compensation decisions with respect to Plaintiff and enforced the Company's practice of paying non-Japanese/non-Asian employees substantially less than their Japanese/Asian counterparts.

59.    In addition, or alternatively, to the above described disparate treatment, Mr. Schanfield suffered the disparate impact of Sojitz's policies of: (a) applying different, more lucrative compensation standards to the all Japanese/Asian rotational staff; (b) vesting subjective discretion in the Japanese/Asian management executives with respect to compensation of national staff employees such as Mr. Schanfield; (c) using informal subjective methods for compensation decisions which otherwise allow for discrimination; and/or (d) other compensation policies, practices or procedures which disparately impacted non-Japanese/non-Asian employees.

**Discrimination in Discipline and Termination**

60.    In addition to the above-described discrimination with respect to management opportunities and compensation, Plaintiff was also subject to Sojitz's policy of applying different

and more lenient standards of discipline to the Japanese/Asian rotational staff. Thus, as described in more detail below, Plaintiff was abruptly terminated without warning despite his dedication, hard work, and excellent performance. In contrast, Japanese/Asian rotational staff who are incompetent or engaged in serious wrongdoing are not terminated or subjected to any meaningful discipline. For example, Sojitz's Treasurer and Head of IT, both rotational employees, were not terminated or even disciplined despite recognition by top Sojitz executives, including Defendant Matsumoto, of their total incompetence and the enormous amount of money they have cost the Company.

61.     In addition, or alternatively, to this disparate treatment, Mr. Schanfield suffered from the disparate impact of Sojitz's policies of: (a) applying different, more lenient disciplinary standards to the Japanese/Asian rotational staff and/or (b) vesting subjective discretion in the predominantly Japanese/Asian management with respect to discipline of national staff employees. These policies disproportionately harm non-Japanese/non-Asian employees and are not justified by a legitimate business purpose.

62.     Upon information and belief, Defendants Matsumoto and Tsukada directly participated in all disciplinary decisions with respect to Plaintiff and enforced the Company's practice of disciplining non-Japanese/non-Asian employees far more severely than their Japanese/Asian counterparts.

**Retaliation**

63.     Despite the discriminatory treatment to which he was subjected, Plaintiff continued to perform his work diligently and persevered in fulfilling his obligations as Chief Internal Auditor. During the course of this work, Mr. Schanfield identified numerous instances of discrimination at Sojitz, including race/national origin, gender, and age discrimination. Mr.

Schanfield reported these incidents to management and repeatedly urged action to address the problem.

64.     For example, on or about September 14, 2006, Mr. Schanfield uncovered an instance of sexual harassment by two Japanese/Asian rotational staff employees towards a Japanese-American female employee on one of his visits to a Sojitz branch office located in Los Angeles, California and reported it to Akita Hisashi.

65.     Additionally, on or about September 29, 2006, Plaintiff reported back to Defendant Tsukada about his visit to the Sojitz branch office in Detroit and the unlawful use of age as a factor in hiring he had identified there. Plaintiff had discovered explicit references to hiring "younger staff," by a senior rotational executive and additionally noticed various documents that noted the ages of certain employees. Plaintiff subsequently reported these inappropriate comments to the Vice President of Human Resources who remarked that discrimination on the basis of age was a common practice at Sojitz and cited another example of age discrimination by a key employee at Corporate Headquarters.

66.     On or about October 18, 2006, Plaintiff reported in his preliminary risk assessment, the disparity between the all Japanese/Asian rotational staff and non-Japanese/non-Asian national staff at the management level. In this preliminary risk assessment, which was delivered to the top management at the Company, Mr. Schanfield identified a morale problem within national staff- throughout the entire United States offices- as a result of this imbalance and concluded that "creating a career path for nationals to replace some rotationals is key."

67.     Moreover, on or about December 27, 2006, Plaintiff sent a memoranda to both Defendants Matsumoto and Tsukada discussing the need for prompt roll out of the Code of Conduct at Sojitz. In the memoranda, Mr. Schanfield noted the absence of women in

management positions, the indications of age discrimination, the incidence of sexual harassment, and the imbalance of rotational to national staff.

68.     On or about March 30, 2007, Plaintiff provided Defendant Matsumoto with a Business Risk Inventory report. In this report, Mr. Schanfield warned Defendant Matsumoto of the difficulty Sojitz would have if the Company had to undergo an affirmative action audit. Mr. Schanfield once again emphasized the issues and concerns he raised in his previous reports. Mr. Schanfield also noted that non-Japanese/non-Asian national staff employees in the Legal Department received an unfair distribution of work as compared to their Japanese/Asian counterparts.

69.     Lastly, on or about April 15, 2007, Plaintiff delivered to Defendant Matsumoto the Summary of Top 43 Risks, reiterating once again his prior concerns of the widespread discrimination at Sojitz and its effect on non-Japanese/non-Asian employees. Defendant Matsumoto, in turn, told Mr. Schanfield that his report, representing months of work on all aspects of the Company and a top-level audit product, would not be used to implement an audit program.

70.     Mr. Schanfield's insistence on addressing serious issues of unlawful discrimination at Sojitz and his repeated complaints to Defendant Matsumoto and top management executives were met with hostility and retaliation. Defendants Matsumoto participated in this retaliatory treatment by, among other acts, demeaning Plaintiff's work, further isolating Plaintiff from top management, and making it that much more difficult for Plaintiff to have his concerns addressed.

71.     For example, Defendant Matsumoto met with the entire administrative group management team towards the end of April and informed them that they did not need to be

22

concerned about the Plaintiff's work product.   He also falsely informed them that Deloitte &

Touche made  disparaging remarks about the Plaintiff's work product- which was not true as

Deloitte had not reviewed any of Plaintiff's reports at that point

72.    Thereafter, Defendant Matsumoto met with the internal audit group of Deloitte

& Touche to review the approach adopted by Mr. Schanfield in performing his risk assessment.

Despite Plaintiff's extensive experience and title of Chief Internal Auditor, Defendant

Matsumoto found it necessary to seek a second opinion on the work performed by Mr.

Schanfield.  This undermined Plaintiff's authority and position at the Company and in the eyes of

the outside accountants.  In the end, the representatives of Deloitte & Touche not only concurred

with the approach chosen by Mr. Schanfield, but indicated that his thinking on the subject of

risk, governance and internal audit was well advanced.

73.    On or about April 23, 2007, Plaintiff once again approached Defendant

Matsumoto to discuss the discriminatory conduct and other problems that still remained

unacknowledged by the Company.  In response, Defendant Matsumoto informed Mr. Schanfield,

"This is a Japanese company and we will do as we please." The Chief Legal Officer who was

subsequently summoned to this meeting told Matsumoto that "Mr. Schanfield is now being asked

to do things which were totally inconsistent with what he was hired to do" and shortly after this

meeting informed Mr. Schanfield that "they even had me fooled."

74.    The retaliation for Plaintiff's numerous reports of discrimination at Sojitz

culminated on or about May 21, 2007, when Sojitz abruptly terminated Plaintiff's employment.

At the time of Plaintiff's termination, Sojitz offered no explanation or justification for doing so.

75.    Upon information and belief, given their respective positions, Defendants Matsumoto and Tsukada were actively involved in the decision to unlawfully terminate Mr. Schanfield's employment at Sojitz.

76.    On or about January 2, 2008, Sojitz filed counterclaims against Plaintiff alleging breach of contract, breach of fiduciary duty and duty of loyalty, and misappropriation of trade secrets. As asserted in Plaintiff's Answer to the Counterclaims, the allegations are without merit. The Company filed counterclaims against Plaintiff in retaliation for his asserting claims of discrimination and retaliation against Defendants. Upon information and belief, given their respective positions, Defendants Matsumoto and Tsukada were actively involved in the decision to file counterclaims against Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Class Claims of Discrimination in Violation of Section 1981 Against Defendant Sojitz)

77.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 76, inclusive, as if fully set forth herein.

78.    Defendant Sojitz has discriminated against Plaintiff and the members of the proposed class by treating them differently from and less favorably than similarly situated Asian employees and by subjecting them to discriminatory denials of promotion and management opportunities, disparate pay, discriminatory disciplinary procedures, and other disparate terms and conditions of employment on the basis of their race (non-Asian) in violation of Section 1981.

79.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff and the members of the proposed class have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited

24

to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

80.      As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Section 1981, Plaintiff and the members of the proposed class have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

81.      Defendant Sojitz's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff and the members of the proposed class are entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Class Claims of Retaliation in Violation of Section 1981 Against Defendant Sojitz)

82.      Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.      Defendant Sojitz retaliated against Plaintiff and the members of the proposed class by, inter alia, subjecting them to materially adverse actions that would deter a reasonable employee from engaging in protected activity in violation of Section 1981 for their opposition to and/or their participation in lodging complaints against Defendant Sojitz's discriminatory practices against themselves and other employees and applicants at Sojitz.

84.      As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff and the members of the proposed class have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited

25

to, loss of past and future income, compensation and benefits for which they are entitled to an award of monetary damages and other relief.

85.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Plaintiff and the members of the proposed class have suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages and other relief.

86.     Defendant Sojitz's unlawful and retaliatory actions constitute malicious, willful and wanton violation of Section 1981 for which Plaintiff and the members of the proposed class are entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of Section 1981 Against All Defendants)

87.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 86, inclusive, as if fully set forth herein.

88.     Defendants Sojitz, Matsumoto and Tsukada have discriminated against Plaintiff by treating him differently from and less favorably than similarly situated Asian employees and by subjecting him to discriminatory denials of management opportunities, disparate pay, discriminatory disciplinary procedures, and other disparate terms and conditions of employment on the basis of his race (non-Asian) in violation of Section 1981.

89.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income,

26

compensation and benefits for which he is entitled to an award of monetary damages and other relief.

90.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

91.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of Section 1981
### Against All Defendants)

92.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 91, inclusive, as if fully set forth herein.

93.     Defendants Sojitz, Matsumoto and Tsukada retaliated against Plaintiff by, inter alia, subjecting him to materially adverse actions that would deter a reasonable employee from engaging in protected activity in violation of Section 1981 for his opposition to and/or his participation in lodging complaints against Defendants' discriminatory practices against him.

94.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

27

95.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

96.     Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violation of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of New York State Human Rights Law Against All Defendants)

97.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.     Defendants Sojitz, Matsumoto and Tsukada discriminated against Plaintiff on the basis of his Race and/or National Origin in violation of the New York State Human Rights Law by denying him the same terms and conditions of employment available to employees who are Japanese/Asian, including but not limited to, denying him equal management opportunities, disparate pay, discriminatory disciplinary procedures and terminating him on grounds for which Japanese/Asian employees would not be terminated.

99.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

28

100.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of New York State Human Rights Law Against All Defendants)

101.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 100, inclusive, as if fully set forth herein.

102.    Defendants Sojitz, Matsumoto and Tsukada retaliated against Plaintiff by, inter alia, subjecting him to materially adverse actions that would deter a reasonable employee from engaging in protected activity in violation of the New York State Human Rights Law for his opposition to and/or his participation in lodging complaints against Defendants' discriminatory practices against himself and other employees and applicants at Sojitz.

103.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

104.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to

29

depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Individual Claim of Aiding and Abetting in Violation of New York State Human Rights Law Against Defendant Matsumoto and Defendant Tsukada)

105.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 104, inclusive, as if fully set forth herein.

106.    Defendants Matsumoto and Tsukada knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and/or retaliation against Plaintiff in violation of the New York State Human Rights Law.

107.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

108.    As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A EIGHTH CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of New York City Human Rights Law Against All Defendants)

109.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 108, inclusive, as if fully set forth herein.

110.     Defendants Sojitz, Matsumoto and Tsukada discriminated against Plaintiff on the basis of his Race and/or National Origin in violation of the New York City Human Rights Law by denying him the same terms and conditions of employment available to employees who are Japanese/Asian, including but not limited to, denying him equal management opportunities, disparate pay, discriminatory disciplinary procedures, and terminating him on grounds for which Japanese/Asian employees would not be terminated.

111.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

112.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

113.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of New York City Human Rights Law Against All Defendants)

114.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 113, inclusive, as if fully set forth herein.

115.     Defendants Sojitz, Matsumoto and Tsukada retaliated against Plaintiff by, inter alia, subjecting him to materially adverse actions that would deter a reasonable employee from engaging in protected activity in violation of the New York City Human Rights Law for his opposition to and/or his participation in lodging complaints against Defendants' discriminatory practices against himself and other employees and applicants at Sojitz.

116.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

117.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

118.    Defendants Sojitz's, Matsumoto's and Tsukada's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Individual Claim of Aiding and Abetting in Violation of New York City Human Rights Law Against Defendant Matsumoto and Defendant Tsukada)

119.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 118, inclusive, as if fully set forth herein.

120.    Defendants Matsumoto and Tsukada knowingly or recklessly aided and abetted the unlawful employment practices, discrimination and/or retaliation against Plaintiff in violation of the New York City Human Rights Law.

121.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

122.    As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

123.    Defendants Matsumoto and Tsukada's unlawful actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

33

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class whom he seeks to represent, request the following relief:

A.    Certification of the case as a class action maintainable under the Federal Rules of Civil Procedure Rule 23 (a), (b)(2) and/or (b)(3), on behalf of the proposed plaintiff class and designation of Plaintiff as representative of this class and his counsel of record as class counsel;

B.    Declaratory judgment that the actions, conduct and practices of Defendant Sojitz complained of herein violate the laws of the United States and the State and City of New York;

C.    An injunction and order permanently restraining Defendant Sojitz and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination as set forth herein.

D.    An order directing Defendant Sojitz to place Plaintiff and the members of the class in the positions they would have occupied but for Defendant Sojitz's discriminatory, retaliatory and/or otherwise unlawful treatment of them, as well as to take such other affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect Plaintiff and the members of the class;

E.    An award of damages in an amount to be determined at trial plus prejudgment interest, to compensate Plaintiff and the members of the class for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

F.    An award of damages in an amount to be determined at trial plus prejudgment interest, to compensate Plaintiff and the members of the class for all non-monetary and/or compensatory damages, including but not limited to, compensation for their severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

G.    An award of damages in an amount to be determined at trial plus prejudgment interest, to compensate Plaintiff and the members of the class for harm to their professional and personal reputations and loss of career fulfillment;

H.    An award of punitive damages in an amount to be determined at trial;

I.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff and the members of the class in an amount to be determined at trial, plus prejudgment interest;

J.    An award of costs that Plaintiff and/or the class has incurred in this action, including but not limited to expert witness fees, as well as reasonable attorneys' fees and costs to the fullest extent permitted by law; and

K.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the members of the class, hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 31, 2008
       New York, New York

THOMPSON WIGDOR & GILLY LLP

By: _____
      Kenneth P. Thompson (KT-6026)
      Douglas H. Wigdor (DW-9737)
      Scott Browning Gilly (SG-6861)
      Kathryn J. Webber (KW-9576)

350 Fifth Avenue, Suite 5720
New York, NY  10118
Telephone:   (212) 239-9292
Facsimile:    (212) 239-9001

COUNSEL FOR PLAINTIFF AND
PROPOSED CLASS COUNSEL

36