Laura H. Allen
Cliff Fonstein
Joanne Seltzer
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
Sojitz Corporation of America,
Jun Matsumoto and Takashi Tsukada

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

ARNOLD SCHANFIELD, individually and on
behalf of others similarly situated,

                             Plaintiff,

                - against -

SOJITZ CORPORATION OF AMERICA; JUN
MATSUMOTO in his official and individual
capacities; and TAKASHI TSUKADA in his
official and individual capacities,

                        Defendants.

------------------------------------------------------------- X

No. 07 Civ. 9716 (CM) (JCF)

**ANSWER AND
COUNTERCLAIMS TO THE
FIRST AMENDED
CLASS ACTION COMPLAINT**

      Defendant Sojitz Corporation of America ("SCA"), by its attorneys, Sidley Austin

LLP, as and for its Answer to Plaintiff's Amended Class Action Complaint (the "Complaint"),

states as follows:

           1.      Denies the allegations contained in Paragraph 1 of the Complaint.

           2.      States that the allegations contained in Paragraph 2 of the Complaint

contain no factual averments to which a response is required; and, to the extent that factual

averments are made, denies the allegations contained in Paragraph 2.

3.    States that the allegations contained in Paragraph 3 of the Complaint contain no factual averments to which a response is required; and, to the extent that factual averments are made, denies the allegations contained in Paragraph 3.

4.    States that the allegations contained in Paragraph 4 of the Complaint constitute legal conclusions as to which no response is required.

5.    States that the allegations contained in Paragraph 5 of the Complaint constitute legal conclusions as to which no response is required, except admits that SCA's principal place of business is located in the Southern District of New York, and denies that SCA engaged in unlawful employment practices.

6.    Denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 6 of the Complaint, and avers that the EEOC charge provided to SCA by the EEOC shows that it was received by the EEOC on November 1, 2007.

7.    Denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 7 of the Complaint.

8.    Denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 8 of the Complaint.

9.    Denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 9 of the Complaint.

10.    Denies the allegations contained in Paragraph 10 of the Complaint, except avers that Plaintiff is a former Chief Internal Auditor of SCA, that he was employed in the New York office of SCA and that SCA records reflect that he resided in Fort Lee, New Jersey during his employment with SCA.

11. States that the allegations concerning SCA's status as a successor to Nissho Iwai American Corporation and Nichimen Corporation constitute a legal conclusion as to which no response is required, and admits the remaining allegations contained in Paragraph 11 of the Complaint.

12. Denies the allegations contained in Paragraph 12 of the Complaint.

13. Denies the allegations contained in Paragraph 13 of the Complaint, and avers that rotational staff are employees of SCA's Japanese parent company who are sent to work for SCA for a term that is typically from three to five years in duration, that rotational employees have expatriate status while serving on such overseas assignments, and that the national staff are hired locally by SCA, typically for an indefinite term.

14. Denies the allegations contained in Paragraph 14 of the Complaint.

15. Denies the allegations contained in Paragraph 15 of the Complaint.

16. Denies the allegations contained in Paragraph 16 of the Complaint.

17. Denies the allegations contained in Paragraph 17 of the Complaint.

18. Denies the allegations contained in Paragraph 18 of the Complaint.

19. Denies the allegations contained in Paragraph 19 of the Complaint.

20. Denies the allegations contained in Paragraph 20 of the Complaint.

21. Denies the allegations contained in Paragraph 21 of the Complaint.

22. Denies the allegations contained in Paragraph 22 of the Complaint.

23. Denies the allegations contained in Paragraph 23 of the Complaint.

24. Denies the allegations contained in Paragraph 24 of the Complaint.

25. Denies the allegations contained in Paragraph 25 of the Complaint.

26. Denies the allegations contained in Paragraph 26 of the Complaint.

27.     Denies the allegations contained in Paragraph 27 of the Complaint, and, to the extent that Paragraph 27 of the Complaint purports to paraphrase or interpret a non-privileged document, SCA respectfully refers the Court to the document referred to in Paragraph 27 for a complete and accurate statement of its contents.

28.     Denies the allegations contained in Paragraph 28 of the Complaint, and avers that, during the ten month period that Plaintiff was employed at SCA, there were a number of non-Asian, non-Japanese individuals in high-level positions and that Plaintiff was one of three Caucasian individuals who were employed as heads of their respective departments.

29.     Denies the allegations contained in Paragraph 29 of the Complaint, and, to the extent that Paragraph 29 of the Complaint purports to paraphrase or interpret a non-privileged document, SCA respectfully refers the Court to the document referred to in Paragraph 29 of the Complaint for a complete and accurate statement of its contents.

30.     Denies the allegations contained in Paragraph 30 of the Complaint.

31.     Denies the allegations contained in Paragraph 31 of the Complaint.

32.     Denies the allegations contained in Paragraph 32 of the Complaint.

33.     States that the allegations contained in Paragraph 33 of the Complaint contain no factual averments to which a response is required; and, to the extent that factual averments are made, denies the allegations contained in Paragraph 33 of the Complaint.

34.     Denies the allegations contained in Paragraph 34 of the Complaint and avers that the certification of a class is not appropriate in this action and would be neither an efficient nor an economical way to resolve Plaintiff's claims or the purported claims of any other person.

35.    Denies the allegations contained in Paragraph 35 of the Complaint and avers that the purported member class is not numerous enough to make joinder of all members impracticable.

36.    Denies the allegations contained in Paragraph 36 of the Complaint, and avers that Plaintiff is uniquely situated and that his claims therefore do not raise questions of law and fact common to any class.

37.    Denies knowledge or information as to which policies, practices and/or procedures are the subject of the allegations contained in Paragraph 37 of the Complaint, and avers that SCA's corporate policies, including its EEO policies and Code of Conduct, are formulated by SCA's management and applied consistently to all of its employees.

38.    Denies the allegations contained in Paragraph 38 of the Complaint and avers that Plaintiff is uniquely situated, is not a proper member of the alleged class he seeks to represent, and that his claims are not typical of the claims of any proposed class member.

39.    Denies the allegations contained in Paragraph 39 of the Complaint, except denies knowledge or information sufficient to form a belief as to the qualifications and experience of Plaintiff's counsel and his counsel's ability to meet the time and fiscal demands to litigate an employment discrimination class action, and avers that Plaintiff is not an adequate class representative and that his interests are not co-extensive with those of the members of the proposed class.

40.    Denies the allegations contained in Paragraph 40 of the Complaint.

41.    Denies the allegations contained in Paragraph 41 of the Complaint.

42.    Denies the allegations contained in Paragraph 42 of the Complaint and avers that the issues of fact and law affecting Plaintiff's claims are not common to any purported

class member and that issues unique to Plaintiff's claims predominate over common issues, if any.

43.    Denies the allegations contained in Paragraph 43 of the Complaint.

44.    Denies the allegations contained in Paragraph 44 of the Complaint.

45.    Denies the allegations contained in Paragraph 45 of the Complaint, except admits that Plaintiff began working at SCA as Chief Internal Auditor on July 10, 2006.

46.    Denies the allegations contained in Paragraph 46 of the Complaint.

47.    Denies the allegations contained in Paragraph 47 of the Complaint except admits that Plaintiff held the title of Chief Internal Auditor.

48.    Denies the allegations contained in Paragraph 48 of the Complaint, and avers that, on or about August 8, 2006, Hisashi Akita, an internal auditor employed in the Japanese parent company's Tokyo office, commenced a three month visit to the United States to follow up on the 2005 internal audit he had performed at SCA, and to assist Plaintiff in making the transition to SCA and in understanding the audit processes of the Japanese parent company.

49.    Denies the allegations contained in Paragraph 49 of the Complaint.

50.    Denies the allegations contained in Paragraph 50 of the Complaint.

51.    Denies the allegations contained in Paragraph 51 of the Complaint.

52.    Denies the allegations contained in Paragraph 52 of the Complaint.

53.    Denies the allegations contained in Paragraph 53 of the Complaint, and avers that Plaintiff was not invited to participate in a video conference on or about November 29, 2006 for valid non-discriminatory reasons.

54.    Denies the allegations contained in Paragraph 54 of the Complaint.

55.    Denies the allegations contained in Paragraph 55 of the Complaint.

56.     Denies the allegations contained in Paragraph 56 of the Complaint.

57.     Denies the allegations contained in Paragraph 57 of the Complaint.

58.     Denies the allegations contained in Paragraph 58 of the Complaint, and avers that Plaintiff was not eligible for compensation and benefit schemes available to rotational employees with expatriate status because he was not an expatriate, and could not have been eligible to receive incentive compensation because he was employed at SCA less than one year.

59.     Denies the allegations contained in Paragraph 59 of the Complaint, and avers that, after Plaintiff accepted SCA's initial compensation offer, he never became eligible to be considered for additional compensation because he was employed less than one year, and, therefore, was never subject to the decision-making standards, practices or processes alleged in Paragraph 59 of the Complaint.

60.     Denies the allegations contained in Paragraph 60 of the Complaint, and avers that the employees to whom Plaintiff purports to compare himself were not similarly situated to Plaintiff.

61.     Denies the allegations contained in Paragraph 61 of the Complaint.

62.     Denies the allegations contained in Paragraph 62 of the Complaint.

63.     Denies the allegations contained in Paragraph 63 of the Complaint, and avers that it was a fundamental duty of the Chief Internal Auditor to identify and report to SCA's management potential risks of various kinds he discovered in the performance of his job.

64.     Denies the allegations contained in Paragraph 64 of the Complaint, and avers that a Japanese/American female national employee of a partly-owned subsidiary of SCA, reported to Plaintiff and Mr. Akita that two male Japanese employees had engaged in

inappropriate behavior, that the matter was referred to SCA's Human Resources and Legal Departments who conducted a prompt investigation, and the matter was appropriately resolved.

65.    Denies the allegations contained in Paragraph 65 of the Complaint, and avers that it was a fundamental duty of the Chief Internal Auditor to identify and report to SCA's management potential risks discovered in the performance of his job, and, to the extent that Paragraph 65 of the Complaint purports to paraphrase or interpret a non-privileged document, respectfully refers the Court to such document for a complete and accurate statement of its contents.

66.    Denies the allegations contained in Paragraph 66 of the Complaint, and avers that, in his capacity as Chief Internal Auditor, and as part of his job, Plaintiff provided a preliminary risk assessment to senior management on or about October 18, 2006, and, to the extent that such document is not a privileged communication, respectfully refers the Court to the document for a complete and accurate statement of its contents.

67.    Denies the allegations contained in Paragraph 67 of the Complaint, and avers that Plaintiff prepared the memorandum referred to in Paragraph 67 of the Complaint in his capacity as SCA's Chief Internal Auditor with responsibility to identify and report to SCA's management potential risks discovered in the performance of his job, and to the extent such document is not a privileged communication, SCA respectfully refers the Court to the document for a complete and accurate statement of its contents.

68.    Denies the allegations contained in Paragraph 68 of the Complaint, and avers that, on or about March 30, 2007, Plaintiff sent to Defendant Matsumoto and to others a risk assessment report prepared by Plaintiff in his capacity as Chief Internal Auditor, and states that, to the extent that Paragraph 68 of the Complaint purports to paraphrase or interpret a non-

privileged document, SCA respectfully refers the Court to said document for a complete and accurate statement of its contents.

69.    Denies the allegations contained in Paragraph 69 of the Complaint, and avers that any such risk analysis or summary was created by Plaintiff as part of his responsibilities as Chief Internal Auditor, and states that, to the extent that such risk summary is not privileged, SCA respectfully refers the Court to the document for a complete and accurate statement of its contents.

70.    Denies the allegations contained in Paragraph 70 of the Complaint.

71.    Denies the allegations contained in Paragraph 71 of the Complaint.

72.    Denies the allegations contained in Paragraph 72 of the Complaint, and avers that Defendant Matsumoto provided Deloitte & Touche with a copy of Plaintiff's risk assessment for the legitimate purpose of seeking professional advice on the utility of Plaintiff's work product.

73.    Denies the allegations contained in Paragraph 73 of the Complaint.

74.    Denies the allegations contained in Paragraph 74 of the Complaint, except admits that Plaintiff's employment with SCA was terminated on May 21, 2007, and states that the decision to terminate Plaintiff's employment was based solely on legitimate, non-discriminatory grounds relating to his conduct and performance.

75.    Denies the allegations contained in Paragraph 75 of the Complaint, except admits that Defendant Matsumoto was involved in the decision to terminate Plaintiff's employment, and avers that Defendant Tsukada ceased working at SCA and returned to Japan in March 2007, and was not involved in the decision to terminate Plaintiff's employment.

76.    Denies the allegations contained in Paragraph 76 of the Complaint, except admits that on January 2, 2008, SCA filed counterclaims against Plaintiff alleging breach of contract, breach of fiduciary duty and duty of loyalty, and misappropriation of trade secrets.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Class Claims of Discrimination in Violation of Section 1981
### Against Defendant Sojitz)

77.    Responding to Paragraph 77 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 76, inclusive, as if fully set forth herein.

78.    Denies the allegations contained in Paragraph 78 of the Complaint.

79.    Denies the allegations contained in Paragraph 79 of the Complaint.

80.    Denies the allegations contained in Paragraph 80 of the Complaint.

81.    Denies the allegations contained in Paragraph 81 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Class Claims of Retaliation in Violation of Section 1981
### Against Defendant Sojitz)

82.    Responding to Paragraph 82 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.    Denies the allegations contained in Paragraph 83 of the Complaint.

84.    Denies the allegations contained in Paragraph 84 of the Complaint.

85.    Denies the allegations contained in Paragraph 85 of the Complaint.

86.    Denies the allegations contained in Paragraph 86 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of Section 1981
### Against All Defendants)

87.    Responding to Paragraph 87 of the Complaint, repeats and realleges its

answers to Paragraphs 1 through 86, inclusive, as if fully set forth herein.

88.    Denies the allegations contained in Paragraph 88 of the Complaint.

89.    Denies the allegations contained in Paragraph 89 of the Complaint.

90.    Denies the allegations contained in Paragraph 90 of the Complaint.

91.    Denies the allegations contained in Paragraph 91 of the Complaint.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of Section 1981
### Against All Defendants)

92.    Responding to Paragraph 92 of the Complaint, repeats and realleges its

answers to Paragraphs 1 through 91, inclusive, as if fully set forth herein.

93.    Denies the allegations contained in Paragraph 93 of the Complaint.

94.    Denies the allegations contained in Paragraph 94 of the Complaint.

95.    Denies the allegations contained in Paragraph 95 of the Complaint.

96.    Denies the allegations contained in Paragraph 96 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of New York State Human Rights Law
### Against All Defendants)

97.    Responding to Paragraph 97 of the Complaint, repeats and realleges its

answers to Paragraphs 1 through 96, inclusive, as if fully set forth herein.

98.    Denies the allegations contained in Paragraph 98 of the Complaint.

99.    Denies the allegations contained in Paragraph 99 of the Complaint.

100.    Denies the allegations contained in Paragraph 100 of the Complaint.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of New York State Human Rights Law Against All Defendants)

101.    Responding to Paragraph 101 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 100, inclusive, as if fully set forth herein.

102.    Denies the allegations contained in Paragraph 102 of the Complaint.

103.    Denies the allegations contained in Paragraph 103 of the Complaint.

104.    Denies the allegations contained in Paragraph 104 of the Complaint.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Individual Claim of Aiding and Abetting in Violation of New York State Human Rights Law Against Defendant Matsumoto and Defendant Tsukada)

105.    Responding to Paragraph 105 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 104, inclusive, as if fully set forth herein.

106.    Denies the allegations contained in Paragraph 106 of the Complaint.

107.    Denies the allegations contained in Paragraph 107 of the Complaint.

108.    Denies the allegations contained in Paragraph 108 of the Complaint.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Individual Claim of Discrimination in Violation of New York City Human Rights Law Against All Defendants)

109.    Responding to Paragraph 109 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 108, inclusive, as if fully set forth herein.

110.    Denies the allegations contained in Paragraph 110 of the Complaint.

111.    Denies the allegations contained in Paragraph 111 of the Complaint.

112.  Denies the allegations contained in Paragraph 112 of the Complaint.

113.  Denies the allegations contained in Paragraph 113 of the Complaint.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Individual Claim of Retaliation in Violation of New York City Human Rights Law Against All Defendants)

114.  Responding to Paragraph 114 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 113, inclusive, as if fully set forth herein.

115.  Denies the allegations contained in Paragraph 115 of the Complaint.

116.  Denies the allegations contained in Paragraph 116 of the Complaint.

117.  Denies the allegations contained in Paragraph 117 of the Complaint.

118.  Denies the allegations contained in Paragraph 118 of the Complaint.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Individual Claim of Aiding and Abetting in Violation of New York State Human Rights Law Against Defendant Matsumoto and Defendant Tsukada)

119.  Responding to Paragraph 119 of the Complaint, repeats and realleges its answers to Paragraphs 1 through 118, inclusive, as if fully set forth herein.

120.  Denies the allegations contained in Paragraph 120 of the Complaint.

121.  Denies the allegations contained in Paragraph 121 of the Complaint.

122.  Denies the allegations contained in Paragraph 122 of the Complaint.

123.  Denies the allegations contained in Paragraph 123 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

All claims raised, all allegations made, and all causes of action asserted in the Complaint against SCA fail to state a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint should be dismissed because, at all times relevant hereto, SCA acted in good faith and did not violate any right that may be secured to Plaintiff under any federal, state or local laws, rules, regulations or guidelines.

### THIRD AFFIRMATIVE DEFENSE

Any and all actions taken by SCA with regard to Plaintiff were based on legitimate, nondiscriminatory business reasons, unrelated to Plaintiff's race or national origin.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, because of his failure to mitigate his purported damages.

### FIFTH AFFIRMATIVE DEFENSE

Assuming, arguendo, while vigorously denying, that SCA injured Plaintiff, Plaintiff has not demonstrated and cannot demonstrate facts sufficient to warrant compensatory, punitive or exemplary damages.

### SIXTH AFFIRMATIVE DEFENSE

Assuming, arguendo, while vigorously denying, that SCA engaged in any unlawful conduct in relation to Plaintiff's employment, SCA still would have engaged in the same course of conduct for legitimate, non-discriminatory reasons.

### SEVENTH AFFIRMATIVE DEFENSE

In or about August 2007, SCA learned that, while Plaintiff was employed by SCA, Plaintiff had violated SCA policies and Plaintiff's written agreement with SCA by using SCA's email system to distribute confidential documents belonging to SCA, including highly-sensitive risk management reports, to third parties not affiliated with SCA and by otherwise

disclosing SCA's confidential information without SCA's knowledge or authorization. SCA also learned that, prior to his departure from SCA, Plaintiff took confidential documents belonging to SCA, without authorization. Plaintiff has refused SCA's requests to return its property. Had SCA known of Plaintiff's misconduct in taking, disclosing, and refusing to return highly confidential and proprietary materials of SCA, it would have terminated Plaintiff's employment for violation of its policies, Plaintiff's express agreement with SCA, and his fiduciary duties to SCA. Under the after-acquired evidence doctrine, Plaintiff's damages, if any, are cut off as of the date SCA discovered Plaintiff's misconduct.

### EIGHTH AFFIRMATIVE DEFENSE

The causes of action alleged or alluded to in the Complaint are "frivolous, unreasonable and groundless," within the meaning of Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978), and, accordingly, SCA should recover all costs and attorneys' fees incurred in defending this action.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims of retaliation are barred because he did not engage in protected activity, as required under the relevant statutes, including, but not limited to, Section 2000e-3 of Title VII.

SCA has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, separate defenses available. SCA reserves the right to assert additional separate defenses in the event discovery indicates, or SCA otherwise becomes aware, that additional defenses would be appropriate.

WHEREFORE, Defendant SCA respectfully requests the Court enter a judgment:

(1) dismissing the Complaint in its entirety with prejudice against Schanfield;

(2) awarding SCA its costs, expenses and attorneys' fees incurred in defending this action; and

(3) granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

As and for its Counterclaims against Plaintiff/Counterclaim Defendant Arnold Schanfield ("Schanfield"), Defendant/Counterclaim Plaintiff Sojitz Corporation of America ("SCA" or the "Company"), by and through its attorneys, Sidley Austin LLP, alleges as follows:

1.    SCA is a New York corporation with its principal place of business located within the Southern District of New York, at 1211 Avenue of the Americas, New York, New York, 10036.

2.    Upon information and belief, Schanfield is a resident of the State of New Jersey.

3.    On or about July 10, 2006, Schanfield accepted employment with SCA as Chief Internal Auditor and signed an employment agreement dated June 27, 2006 (the "Agreement").

4.    The Agreement provided, in relevant part:

Given the nature of your position, you will have access to certain confidential or proprietary information held or

> received by SCA (including but not limited to business
> plans, services or servicing methods, strategies, technical
> data, trade secrets, software marketing and financial
> information of SCA or SCA's current and/or prospective
> business clients (collectively, the "Information") which
> may be disclosed to you in writing during the course of
> your employment with SCA.
>
> You agree that, except to the extent that such information is
> in the public domain or as may be required by a lawful
> court order to (i) keep all information confidential, (ii) not
> disclose or communicate same to any other person or
> entity, (iii) not use the Information for any purpose
> whatsoever other than in performing your duties as an
> employee of SCA and (iv) to return all information at the
> end of your employment with SCA.

A copy of the Agreement is attached hereto.

5.     As a member of SCA's senior management, and specifically as SCA's

Chief Internal Auditor, Schanfield was at all times during his employment privy to SCA's

confidential or proprietary information, including oral information, paper files and electronic

communications.

6.     In his capacity as SCA's Chief Internal Auditor, Schanfield was entrusted

with the responsibility and duty to engage in confidential communications on SCA's behalf with

SCA management and staff, including, but not limited to, SCA's Chief Executive Officer, Chief

Financial Officer and Vice President of Human Resources, for the purpose of conducting an

internal audit of SCA and indicating areas of potential legal liability for the Company.

7.     Schanfield was also entrusted with the responsibility and duty to engage in

privileged and confidential communications with SCA's Chief Legal Officer for the purpose of

providing the Chief Legal Officer with information necessary to enable him to render legal

advice to SCA.

8.    Schanfield continued in the position of Chief Internal Auditor until May 21, 2007, when his employment with SCA was terminated for performance reasons.

9.    At various times during his employment with SCA, including, but not limited to, April 23, 2007, April 26, 2007 and April 30, 2007, Schanfield sent SCA's confidential or proprietary information, through SCA's computer system, to his personal email address at "aschanfield@verizon.net." Schanfield also sent copies of documents containing SCA's confidential or proprietary information to third parties who had no affiliation with SCA, including, but not limited to, David Bachman and Nancy Bakerman.

10.    Such confidential or proprietary information included, but was not limited to, preliminary risk assessments and internal audit plans, documents reflecting risk assessment objectives and processes, confidential personnel information, key competencies and action plans for internal audits and emails between Schanfield and the Chief Executive and Chief Financial Officers describing areas of potential business and/or legal risk, and potential weaknesses in controls that could expose SCA to loss if exploited.

11.    In addition, on or about May 21, 2007, Schanfield asked his assistant to make a copy of SCA's Risk Assessment Review and, upon information and belief, left SCA premises with the Review.

12.    The SCA documents misappropriated by Schanfield contain extensive confidential or proprietary information about SCA's financial and legal positions gathered for Schanfield's audit of all SCA's branches, subsidiaries and other entities in Canada, the United States, Mexico, Central and South America.

13.    Among the information contained in the confidential or proprietary documents misappropriated by Schanfield is information regarding business plans and actual

performance of SCA, business risk, legal exposure and financial information. The documents also contain information derived from Schanfield's confidential interviews, in his capacity as Chief Internal Auditor, of over 100 SCA employees, who were encouraged by SCA's management to candidly discuss their operations with Schanfield.

      14.    Upon information and belief, Schanfield disclosed and communicated SCA's confidential and proprietary information to unauthorized third parties for purposes other than the performance of his duties as an employee of SCA. Upon information and belief, Schanfield disclosed and communicated SCA's confidential and proprietary information to his counsel for purposes of obtaining a monetary settlement or to further his interests in litigation.

      15.    On August 23, 2007, SCA's outside counsel sent Schanfield's counsel a letter requesting that Schanfield desist from disclosing and return to SCA all of the confidential and proprietary documents currently in his possession.

      16.    Again on November 29, 2007, SCA's outside counsel wrote to Schanfield's counsel again requesting that all of SCA's confidential and proprietary documents in Schanfield's or his counsel's possession be returned, and that counsel identify any documents from the files of SCA received from Schanfield so that SCA could determine whether Schanfield's unauthorized disclosures had violated SCA's attorney-client privilege.

      17.    Schanfield's counsel responded by refusing to return or identify such documents, and threatening SCA with a retaliation claim if it sought to pursue its legal remedies in this court.

      18.    To date, none of SCA's confidential and proprietary documents have been returned to SCA or to SCA's outside counsel.

## AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract)

19.     SCA repeats and realleges each and every allegation and averment set forth in Counterclaim paragraphs 1 through 18 as though set forth here in full.

20.     Schanfield violated the Agreement by removing, without SCA's consent or authorization,  copies of documents containing confidential and proprietary information from SCA's premises and failing and refusing to return such documents after the end of his employment with SCA.

21.     Schanfield violated the Agreement by disclosing and communicating, without SCA's consent and authorization, SCA's confidential and proprietary documents and information to persons or entities to which such disclosure was not authorized.

22.     Schanfield further violated the Agreement, and continues to violate the Agreement, by using SCA's confidential or proprietary information for purposes other than the performance of his duties to SCA.

23.     As a direct result of Schanfield's breach of contract, SCA has suffered and continues to suffer substantial damages.

## AS AND FOR A SECOND COUNTERCLAIM
### (Breach of Fiduciary Duty and Duty of Loyalty)

24.     SCA repeats and realleges each and every allegation and averment set forth in Counterclaim paragraphs 1 through 23 as though set forth here in full.

25.     An employee is obligated to be loyal to his employer, to refrain from acting in any manner inconsistent with his agency or trust, and is bound to exercise the utmost good faith and loyalty in the performance of his duties.

26.     As an officer of SCA and a member of SCA's senior management, and as SCA's Chief Internal Auditor, Schanfield owed SCA a fiduciary duty and a duty of loyalty to act, at all times, in the best interests of SCA.

27.     In violation of his fiduciary duty and his duty of loyalty, Schanfield misappropriated SCA's confidential and proprietary information and disclosed such information to his counsel for his benefit and to SCA's detriment.

28.     Because of his violations of his fiduciary duties to SCA, Schanfield forfeited all right to compensation paid to him by SCA during his period of disloyalty.

28.     As a result of Schanfield's breach of fiduciary duty and duty of loyalty, SCA has suffered and continues to suffer substantial damages, including, but not limited to, all amounts paid to Schanfield by SCA during his period of disloyalty.

## AS AND FOR A THIRD COUNTERCLAIM
### (Misappropriation of Trade Secrets)

29.     SCA repeats and realleges each and every allegation and averment set forth in Counterclaim paragraphs 1 through 28 as though set forth here in full.

30.     During his employment with SCA, Schanfield misappropriated documents and information relating to the audit of the Company, including, but not limited to, preliminary risk assessments and internal audit plans, documents reflecting risk assessment objectives and processes, key competencies and action plans, SCA's Risk Assessment Review, and emails between Schanfield and the Chief Executive and Chief Financial Officers describing areas of potential business and/or legal risk and potential weaknesses in controls that could expose SCA to loss if exploited.

31.     These highly confidential documents were created by SCA at great cost and effort and were not known or intended to be known outside of the Company.

32.    SCA has limited the disclosure of the information contained in these confidential and proprietary documents to a select group of senior managers who had a need to know such information, and has taken great measures to guard the secrecy of the information.

33.    The confidential and proprietary documents misappropriated by Schanfield contain extensive operational, marketing and financial information regarding SCA's business and are of great value to SCA.  The unauthorized disclosure of these confidential and proprietary documents would be of great value to SCA's competitors,  who could use the knowledge of SCA's business plans and finances to their competitive and strategic advantage.

34.    The confidential and proprietary documents misappropriated by Schanfield also contain highly sensitive analyses of SCA's internal controls and procedures and of potential weaknesses in the control environment, the unauthorized disclosure of which could result in injury to SCA.

35.    Because of the confidential and proprietary nature of the information contained therein, the documents misappropriated by Schanfield constitute trade secrets under New York law.

36.    Upon information and belief, Schanfield disclosed the confidential and proprietary documents to persons outside of SCA, including, but not limited to, his counsel.

37.    As a result of Schanfield's misappropriation of SCA's trade secrets, SCA has suffered and continues to suffer substantial damages.

WHEREFORE, SCA demands judgment against Schanfield as follows:

(i)    compensatory damages for the amounts SCA has been and will be caused to spend to prevent misuse of its confidential and proprietary documents and communications and to obtain the return of misappropriated documents in an amount to be determined at trial;

      (ii)    restitution damages for the amounts SCA paid in salary and in benefits to Schanfield after his first breach of his fiduciary duty and duty of loyalty;

      (iii)    punitive damages for Schanfield's willful and deliberate misappropriation and disclosure of SCA's confidential and proprietary information;

      (iv)    attorneys' fees, disbursements and other costs;

      (v)    a permanent injunction requiring the return of any document Schanfield created or received in his capacity as an employee of SCA and prohibiting Schanfield or his agents from disclosing to any third party the substance or content of any confidential and/or privileged document wrongfully removed from SCA's premises or from SCA's electronic files;

      (vi)    such other relief as the Court deems just and proper.

Dated: April 9, 2008
      New York, New York

                  SIDLEY AUSTIN LLP

                  By: _Laura Allen_____

                     Laura H. Allen
                     Cliff Fonstein
                     Joanne Seltzer
                     787 Seventh Avenue
                     New York, New York 10019
                     (212) 839-5300

                     Attorneys for Defendants
                     Sojitz Corporation of America, Jun
                     Matsumoto and Takashi Tsukada

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on April _9_, 2008, I caused a true and correct copy of the foregoing Answer and Counterclaims to be served electronic and Federal Express delivery upon the following:

> Kate Webber, Esq.
> Thompson Wigdor & Gilly LLP
> Empire State Building
> 350 Fifth Avenue
> Suite 5720
> New York, New York 10018

_____
Joanne Seltzer