**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ARNOLD SCHANFIELD, individually and on :
behalf of others similarly situated, :
                                         :
                 Plaintiff, :
                                           :
           - against - :          No. 07 CV 9716 (CM) (JCF)
                                           :
SOJITZ CORPORATION OF AMERICA; JUN :     **PLAINTIFF AND CLASS'**
MATSUMOTO in his official and individual :     **PROPOSED JURY CHARGE**
capacities; and TAKASHI TSUKADA in his :
official and individual capacities, :
                                           :
                  Defendants. :
                                           :
-------------------------------------------------------------X

       Plaintiff Arnold Schanfield ("Mr. Schanfield") and the Class submit the following

proposed jury charge pursuant to Fed. R. Civ. P. 51 and Rule 7 of the Individual Practice Rules

of the Honorable Colleen McMahon and respectfully requests that they be permitted to

supplement or modify these proposed instructions as may be necessary or appropriate after

submission of all of the evidence at trial or during an appropriate conference with the Court.


                **PROPOSED JURY CHARGE– CAUSES OF ACTION**

As to Mr. Schanfield

       Mr. Schanfield, the Plaintiff in this action, alleges that Defendants Sojitz Corporation of

America ("Sojitz" or the "Company"), Jun Matsumoto and Takashi Tsukada (collectively

"Defendants"), subjected him to unlawful employment discrimination, as well as retaliated

against him for opposing that discrimination.  Specifically, Mr. Schanfield brings federal claims

under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Section 1981"), Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and supplemental

claims under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"). Mr. Schanfield also alleges that Defendants Matsumoto and Tsukada aided and abetted the discrimination and/or retaliation against him under NYSHRL and NYCHRL.

As to the Class

The Class of non-Asian/non-Japanese national staff of Sojitz alleges that Defendant the Company, subjected them to unlawful employment discrimination. Specifically, the Class brings federal claims under Title VII and Section 1981.

As to Sojitz

Sojitz alleges that Mr. Schanfield breached his contract with the Company, breached his fiduciary duty, and misappropriated trade secrets under New York law.

## THE LEGAL ELEMENTS OF THE CLAIMS

Mr. Schanfield and the Class make several claims against the Defendants, and Defendant Sojitz brings counterclaims against Mr. Schanfield. The parties' differing view of the facts raise issues under several different legal theories, each of which I will explain to you. It is your responsibility to decide whether Mr. Schanfield, the Class and Sojitz have proven each of their claims against each Defendant.

**First**, **Discrimination** - Mr. Schanfield and the Class claim that they were subjected to unlawful discrimination on the basis of race/national origin:

A.  By the Class: Against Sojitz for violation of Title VII and Section 1981;

B.  By Mr. Schanfield: Against Sojitz for violation of Title VII; and

C.  By Mr. Schanfield: Against Sojitz, Jun Matsumoto and Takashi Tsukada for violations of Section 1981, the NYSHRL and the NYCHRL.

**Second**, **Retaliation** - Mr. Schanfield claims that he was subjected to unlawful retaliation for complaining or and otherwise opposing Defendants' unlawful discriminatory treatment of himself and others:

    A.  Against Defendant Sojitz for violation of Title VII;  and

    B.  Against all Defendants for violations of Section 1981, the NYSHRL and the NYCHRL.

    **Third**, **Aiding and Abetting** - Mr. Schanfield claims that Defendants Jun Matsumoto and Takashi Tsukada aided and abetted the unlawful discrimination and/or unlawful retaliation that he was subjected to by Defendant Sojitz in violation of the NYSHRL and NYCHRL.

    **Fourth, Breach of Contract** – Sojitz claims that Mr. Schanfield breached his contract with the Company.

    **Fifth, Breach of Fiduciary Duty and the Duty of Good Faith** – Sojitz claims that Mr. Schanfield breached his fiduciary duty and duty of loyalty to the Company.

    **Sixth, Misappropriation of Trade Secrets** – Sojitz claims that Mr. Schanfield misappropriated Sojitz trade secrets.


    Now that you have a basic understanding of which claims have been asserted by Mr. Schanfield and the Class against which Defendants, and the claims by Sojitz against Mr. Schanfield, I will discuss the specific claims in detail.


See Second Amended Class Action Complaint; Answer and Counterclaims to the Second Amended Class Complaint.

**Proposed Jury Instruction No. 1 – Purposes of Section 1981, Title VII, NYSHRL and NYCHRL Statutes**

Mr. Schanfield, the Plaintiff in this action, and the Class allege that Defendants Sojitz, Jun Matsumoto and/or Takashi Tsukada, subjected them to unlawful employment discrimination based on their race and national origin. Mr. Schanfield also alleges that Defendants retaliated against him for complaining of and otherwise opposing unlawful discrimination in violation of Section 1981, Title VII, the NYSHRL and/or the NYCHRL.

Before I instruct you in detail on each cause of action or claim that Mr. Schanfield and the Class have alleged under these laws, it will be useful for you to understand the purposes of these laws.

The purpose of the federal civil rights statute, Section 1981 is to secure freedom to all persons and to protect individuals in the full enjoyment of the rights of person and property by prohibiting all racially motivated discrimination. Section 1981 guarantees each person, regardless of race or citizenship, freedom from discrimination in the making and enforcing of contracts, including the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship.

The primary purposes of the federal civil rights statute, Title VII, are to achieve equality of employment opportunities, to remove barriers that have operated in the past to favor an identifiable group of employees over other employees, and to make persons whole for injuries suffered on account of unlawful employment discrimination and retaliation.

The purpose of the NYSHRL is to protect the public welfare, health and peace of the State of New York, to assure that every individual within New York is afforded an equal opportunity to enjoy a full and productive life, and to eliminate and prevent discrimination in employment.

4

The purpose of the NYCHRL is to eliminate and prevent discrimination from playing any role in actions relating to employment, and to take other actions against prejudice, intolerance, bigotry, discrimination and bias-related violence or harassment.

California Federal Sav. and Loan Ass'n v. Guerra, 479 U.S. 272, 272, 107 S.Ct. 683, 685 (1987). (quoting Griggs v. Duke Power Co., 401 U.S. 424, 429-430 (1971)); Arizona Governing Comm. for Tax Deferred Annuity and Deferred Comp., 463 U.S. 1073, 1091, 103 S.Ct. 3492, 3503 (1983) (quoting Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)); Dawson v Pastrick 441 F Supp 133(N.D. Ind. 1977), aff'd in part and rev'd in part on other grounds (1979, CA7 Ind) 600 F2d 70; NY Exec. Law § 290(3) (reciting purpose of statute); N.Y. Admin. Code, §8-101 (stating purpose of the statute).

**Proposed Jury Instruction No. 2 – Simultaneous Analysis**
**of Section 1981 and Title VII With the NYSHRL and the NYCHRL**

      As I just mentioned, Mr. Schanfield and the Class have alleged claims of employment

discrimination and Mr. Schanfield's retaliation claim under both federal law - Section 1981 and

Title VII - as well as the NYSHRL and the NYCHRL, which are state and local statutes,

respectively.  The standards applicable to federal claims under Section 1981 and Title VII are the

same.  Moreover, these same standards also govern state and city claims brought under the

NYSHRL and NYCHRL.  Accordingly, wherever possible, the Class' federal claims and Mr.

Schanfield's federal, state and city employment discrimination and retaliation claims will be

addressed together.  This means certain jury instructions will apply to both the New York State

and City claims as well as the federal Section 1981 and Title VII claims.

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000) (noting the same
standards are applied in analyzing claims under Title VII and § 1981); Lacoparra v. Pergament
Home Centers, Inc., 982 F. Supp. 213, 225 (S.D.N.Y. 1997) (elements of employment
discrimination claims are "virtually identical" under New York Executive Law and Title VII);
Kremer v. Chemical Constr. Corp., 456 U.S. 461, 479 (1982); Van Zant v. KLM Royal Dutch
Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996) (citing Miller Brewing Co. v. State Div. of Human
Rights, 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)); Pace University v. New
York City Com'n on Human Rights, 200 A.D.2d 173, 611 N.Y.S.2d 835 (1st Dep't 1994) (the
federal civil rights statute proscribing retaliation (42 U.S.C. § 2000e-3[a] ) and Administrative
Code § 8-107(7) are virtually identical, and we may accordingly look to federal cases for a
description of the elements of unlawful retaliation) (citing Johnson v. Palma, 931 F.2d 203, 207
(2d Cir.1991); Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir.1990); DeCintio v.
Westchester County Med. Center, 821 F.2d 111, 115 (2d Cir. 1987), cert. denied 484 U.S. 965
(1987); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical
standards apply to employment discrimination claims brought under Title VII . . . and the

Administrative Code of the City of New York."); <u>Prince v. Cablevision Sys. Corp.</u>, No. 04 Civ. 8151, 2005 U.S. Dist. LEXIS 8147, at *11-12 ("Since the claims under the NYSHRL [and NYCHRL] are analyzed identically to claims under . . . Title VII, the outcome of an employment discrimination claim made pursuant to the NYSHRL [or NYCHRL] is the same as it under . . . Title VII" and need not be addressed separately.") (citing <u>Smith v. Xerox Corp.</u>, 196 F.3d 385, 363 n.1 (2d Cir. 1999)(citing <u>Leopold v. Baccarat</u>, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999)).

**Proposed Jury Instruction No. 3 – Preponderance of the Evidence**

You, as the jury, are charged with deciding the facts presented to you, and determining whether Mr. Schanfield and the Class have presented enough evidence in the discrimination and retaliation claims for you to find in their favor.  In doing so, you are asked to determine whether Mr. Schanfield and the Class have established the elements of the Section 1981, Title VII, NYSHRL and NYCHRL claims by a "preponderance of the evidence."

Likewise, you must decide whether Sojitz has presented enough evidence for its counterclaims against Mr. Schanfield. You are asked to determine whether the Company has established the elements of its claims by a "preponderance of the evidence."

To "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Mr. Schanfield has the burden of proving each and every element of his claims by a preponderance of the evidence.  If you find that he has not proved any one of the elements by a preponderance of the evidence, you must return a verdict for Defendants on that claim.

Likewise, Defendant Sojitz has the burden of proving each element of its counterclaims and affirmative defenses by a preponderance of the evidence, and should they fail to do so, the defenses and counterclaims will fail.

Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Instr. § 171.60 and § 171.61 (5th ed. 2001); Desert Palace Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2154, 156 L.Ed.2d 84 (2003) (citing O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Instr. § 171.60 (5th ed. 2001)

**Plaintiff's Proposed Instruction No. 4 – Direct Evidence and Circumstantial Evidence**

"Direct Evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. "Circumstantial Evidence" is proof of one or more facts from which you could find another fact. You should consider both types of evidence. The law makes no distinction between the weight given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Inst. § 101.42 (5th ed.) (Circumstantial and Direct Evidence).

**Plaintiff's Proposed Instruction No. 5 - Direct Evidence of Intent is Not Required**

As used in these instructions, Mr. Schanfield must show that Defendants intentionally discriminated or retaliated against him and the Class.  However, Mr. Schanfield is not required to produce direct evidence of intentional discrimination or retaliation.  Intentional discrimination and retaliation may be inferred from the existence of other facts, or the cumulative weight of circumstantial evidence.

Because employers rarely leave a paper trail – or "smoking gun" – attesting to a discriminatory intent, plaintiffs, such as Mr. Schanfield, must often build their cases from indirect evidence and pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.  Therefore, you may consider circumstantial evidence such as the testimony and evidence offered by other employees, evidence relating to company-wide practices which may reveal patterns of discrimination against a group of employees, and other indirect evidence of discriminatory motive.

Epstein v. Kalvin-Miller International, Inc., 121 F.Supp.2d 742, 748 (S.D.N.Y. 2000); O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, 3C Fed. Jury Prac. & Instr. § 171.26 (5th ed. 2001). Hollander v. American Cyanmid Co., 895 F.2d 80, 84-85 (2d Cir. 1990).

**<u>Proposed Jury Instruction No. 6 – Interested Witness – Employee of Party</u>**

The fact that certain witnesses were and still are employed by Defendant Sojitz and the testimony you have heard of these witnesses' relationships with their employer may be considered by you in deciding whether the testimony of one or more of these witnesses is in any way influenced by the employment relationship with Defendant Sojitz.

<u>Adams v. Supermarkets General Corp.</u>, 525 N.Y.S.2d 208 (It is error to refuse to give the suggested charge if the witness is an employee of a party at the time of trial); Dobro v Sloan, 48 AD2d 243, 368 NYS2d 621 (accord); <u>Christensen v. Pittston Stevedoring Corp.</u>, 283 App. Div. 1088 (where the employer will benefit as a result of the verdict, the jury may find that the employee witness is in fact interested); Majestic v Louisville & N. R. Co., 147 F2d 621 (6th Cir) (accord).

**Proposed Jury Instruction No. 7 - Respondeat Superior**

Defendant Sojitz is a corporation.  A corporation may act only through natural persons such as its employees and, in general, any employee of a corporation may bind the corporation by the employees actions and statements while acting within the scope of an employees authority or within the scope of the employees duties as an employee of the corporation.

An employee acting outside the employee's delegated authority or outside the scope of his or her duties may not bind the corporation.  However, even though an act is forbidden by the law, it may still be within the scope of employment so as to impose liability on the corporation. In deciding whether the act complained of was within the scope of authority, you should consider such factors as where the acts took place and their foreseeability.

O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions* Fed., 3C Jury Prac. & Instr. § 171.27 (Respondeat Superior) (5th ed. 2001); Perry v. Ethan Allen, Inc., 115 F.3d 143, 153 (2d Cir. 1997) (no error in refusing to charge jury on respondeat superior liability where plaintiff had alleged harassment by her co-workers not by her superiors).

**Proposed Jury Instruction No. 8 – Discrimination - Nature of the Claim**

It is unlawful for an employer to intentionally discriminate any person because of that person's race or national origin.

Mr. Schanfield and the Class claim that Defendant Sojitz unlawfully discriminated against all non-Asian/non-Japanese managerial employees because of their race/national origin in violation of Section 1981 and Title VII.

Mr. Schanfield claims that Defendants Sojitz, Jun Matsumoto and Takashi Tsukada subjected him to unlawful discrimination because of his race/national origin and retaliation for opposing illegal discrimination in violation of Section 1981, Title VII, NYSHRL and NYCHRL.

Section 1981, Title VII, NYSHRL and NYCHRL all provide that it is an unlawful employment practice for an employer to discriminate in the terms and conditions of employment on the basis of an individual's race or national origin. Terms and conditions of employment include promotional and management opportunities, compensation and other circumstances of employment.

It is your responsibility to decide whether Mr. Schanfield and the Class have proven their claims of discrimination by Defendants because of their race and national origin by a preponderance of the evidence.

O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Instr. §§ 171.01, 171.10 (5th ed. 2001) (nature of the claim, generally); 42 U.S.C.A. § 2000e (in general); Amended Complaint; Amended Answer.

**Proposed Jury Instruction No. 9 – Motivating Factor**

As used in these instructions, it is not necessary that Mr. Schanfield or the Class prove that their race or national origin, or the fact that Mr. Schanfield complained of and otherwise opposed discrimination, was the only reason for discrimination and/or retaliation.  All that Mr. Schanfield needs to show is that his race or national origin, or the fact that he complained of and otherwise opposed discrimination, was a "motivating factor" in Defendants' decision to discriminate or retaliate against him and the Class.

Therefore, Mr. Schanfield's and the Class' (1) race or national origin or (2) complaints of and opposition to discrimination is a "motivating factor" if it played a role in Defendants' decision to discriminate against Mr. Schanfield and the Class or retaliate against him, and need not have been the only reason for Defendants' actions.

O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, 3C Fed. Jury Prac. & Instr. § 171.20 (5th ed. 2001); 5 L. Sand, *et al.*, *Modern Federal Jury Instructions* § 88-50 (2004). Warmsley v. New York City Transit Authority, 308 F. Supp.2d 114, 121-22 (E.D.N.Y. 2004) (ultimate issue in employment discrimination case is whether plaintiff has met burden of proving that adverse employment decision was motivated at least in part by impermissible reason, i.e., discriminatory reason (citing Gonzalez v. Rite Aid of New York, Inc., 199 F. Supp.2d 122, 130 (S.D.N.Y. 2002))); Jacques v. DiMarzio, Inc., 200 F. Supp.2d 151, 162 (E.D.N.Y. 2002) (noting term "motivating factor" is standard one in field of employment discrimination (internal citations omitted)); Batka v. Prime Charter, Ltd., 301 F. Supp. 2d 308, 316 (S.D.N.Y. 2004)(summary judgment denied where plaintiff showed that proffered reasons were not only factor for termination and pregnancy was at least one of motivating factors); Smith v. K&F Indus., Inc., 190 F. Supp. 2d 643, 651 (S.D.N.Y. 2002)(summary judgment denied where plaintiff demonstrated pretext from evidence in record); Brown v. Cushman & Wakefield, Inc., 01 Civ. 6637(RMB)(AJP), 2001 WL 1751269 (S.D.N.Y. July 29, 2002) at * 22 (summary judgment denied where genuine issues of material fact existed as to pretext); Koppenal v. Nepera, Inc., 74 F. Supp. 2d 409, 413 (S.D.N.Y. 1999); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under

Title VII . . . and the Administrative Code of the City of New York."); <u>Prince v. Cablevision Sys. Corp.</u>, No. 04 Civ. 8151, 2005 U.S. Dist. LEXIS 8147, at *11-12 ("Since the claims under the NYSHRL [and NYCHRL] are analyzed identically to claims under . . . Title VII, the outcome of an employment discrimination claim made pursuant to the NYSHRL [or NYCHRL] is the same as it under . . . Title VII" and need not be addressed separately.") (citing <u>Smith v. Xerox Corp.</u>, 196 F.3d 385, 363 n.1 (2d Cir. 1999)(citing <u>Leopold v. Baccarat</u>, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999)).

**Proposed Jury Instruction No. 10 – Discrimination Motivated by Race of National Origin**

It is your responsibility to decide whether Mr. Schanfield and/or the Class have proven

their claims of intentional discrimination by Defendants by a preponderance of the evidence.  In

order for to establish this claim against Defendants, Mr. Schanfield and/or the Class have the

burden of proving by a preponderance of the evidence that Defendants' discrimination and, in

Mr. Schanfield's case, termination of his employment were motivated in part by their race or

national origin.

In showing that race or national origin was a motivating factor, Mr. Schanfield and the

Class are not required to prove that race or national origin was the sole motivation or even the

primary motivation for Defendants' discrimination.  Mr. Schanfield and the Class need only

prove that race or national origin played a motivating part in their decision even though other

factors may also have motivated Defendants.

O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions,* 3C Fed. Jury Prac. & Instr. §
171.20 (5th ed. 2001) (Disparate treatment); 42 U.S.C.A. § 2000e;  Hester v. BIC Corp., 225
F.3d 178, 186 (2d Cir. 2000) (a jury instruction stating that "plaintiff must prove by a
preponderance of the evidence that the defendant intentionally discriminated against her, that is,
the plaintiff's race must be proven by a preponderance of the evidence to have been a substantial
or motivating factor in the defendant's decision to remove her" sufficiently informed jury that
employee had burden of proving that employee was performing at level that met the employer's
legitimate expectations); Cabrera v. Jakabovitz, 24 F.3d 372, 381 (2d Cir. 1994), cert. denied,
513 U.S. 876 (1994) (It is inappropriate to instruct a jury with phrases like "prima facie case"
and "burden of production" because they create distinct risk of confusing jury).  Id., at 381-82 (if
facts of prima facie care are disputed and defendant has produced no rebuttal evidence, jury
needs to be told that if it finds the following facts, plaintiffs are entitled to prevail; there is no
need to label such facts for jury as constituting "prima facie case").

**Proposed Jury Instruction No. 11 – Retaliation Under
Section 1981, Title VII, NYSHRL, and NYCHRL Elements**

Mr. Schanfield claims that Defendants Sojitz, Matsumoto and Tsukada retaliated against him because he opposed conduct made unlawful by Section 1981, Title VII, the NYSHRL and the NYCHRL.  Mr. Schanfield also claims that Defendants Matsumoto and Tsukada in their individual capacities, engaged in and intentionally aided and abetted the unlawful employment practice of retaliating against Mr. Schanfield in violation of the NYSHRL and NYCHRL.  These statutes rely upon employee initiative to combat unlawful employment practices.  In recognition of this fact, Congress enacted the anti-retaliation clause in Title VII to shield an employee from employer retaliation following the employee's attempt to challenge discriminatory conduct.

Indeed, the anti-retaliation provisions of Section 1981 Title VII, the NYSHRL and NYCHRL provide broader protection for retaliation victims than for victims of discrimination, specifically to deter the many forms that retaliation can take.  The anti-retaliation provisions are therefore not limited to actions affecting only the terms and conditions of employment within the workplace, but cover all actions taken by an employer that could potentially dissuade a reasonable employee in the Plaintiff's position from making or supporting a complaint.

Therefore, you may find that Defendants retaliated against Mr. Schanfield, not only by terminating him, but also by failing to issue a written performance warning to him, repeatedly making attempts to impede his fulfillment of his job duties, and in other less apparent actions, such as the reduction in status, or other actions that might deter a reasonable employee from making a complaint of discrimination.

Therefore, in order to prevail on this claim, Mr. Schanfield must show the following:

**First:** Mr. Schanfield engaged in conduct protected by Section 1981, Title VII, the NYSHRL and the NYCHRL.  Section 1981, Title VII, the NYSHRL and the NYCHRL consider

18

internal complaints to a supervisor or to a Human Resources representative or an employee's prior or ongoing opposition to an unlawful employment practice a protected activity.

**Second:** The Defendants knew of Mr. Schanfield's complaints or other protected activity.

**Third:** Mr. Schanfield was subjected to an action that might dissuade a reasonable employee in his position from engaging in such protected conduct.

**Fourth:** Mr. Schanfield's protected conduct was a motivating factor in Defendants' decision to take an adverse employment action against Mr. Schanfield.

Burlington Northern & Sante Fe Railway Co. v. White, 126 S.Ct. 2405, 2407-08, 2414-18, 165 L.Ed.2d 345 (2006) (resolving circuit split by adopting broader "materially adverse to a reasonable employee" retaliation standard); O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions,* 3C Fed Jury Prac. & Inst. § 171.25 (Retaliation, Essential Elements) (5th ed. 2001); McMenemy v. City of Rochester, 241 F.3d 279, 284 (2d Cir.2001) (According to the Second Circuit, Title VII protects an employee from any employer, present or future, who retaliates against the employee because of the employee's prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings.); Summer v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (holding filing of formal charges of discrimination and making internal complaints both constitute protected activity); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 174-7 (2d Cir. 2005); Lacoparra v. Pergament Home Centers, Inc., 982 F. Supp. 213, 225 (S.D.N.Y. 1997) (elements of employment discrimination claims are "virtually identical" under New York Executive Law and Title VII); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 479 (1982); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996) (citing Miller Brewing Co. v. State Div. of Human Rights, 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)); Pace University v. New York City Com'n on Human Rights, 200 A.D.2d 173, 611 N.Y.S.2d 835 (1st Dep't 1994) (the federal civil rights statute proscribing retaliation (42 U.S.C. § 2000e-3[a] ) and Administrative Code § 8-107(7) are virtually identical, and we may accordingly look to federal cases for a description of the elements of unlawful retaliation) (citing Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991), Bigge v. Albertsons, Inc., 894 F.2d 1497, 1501 (11th Cir.1990), and DeCintio v. Westchester County Med. Center, 821 F.2d 111, 115 (2d Cir. 1987), cert. denied 484 U.S. 965 (1987)); CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1961 (2008) (holding that Section 1981 encompasses claims of retaliation); LaFontant v. Citigroup Global Mkts., Inc., No. 04 Civ. 9340, 2005 U.S. Dist. LEXIS 26820, at *20 (S.D.N.Y. Nov. 4, 2005) ("The requirements for stating a cause of action for retaliation under § 1981 are the same as those under Title VII of the 1964 Civil Rights Act."); Reddy v. Salvation Army, No. 06 Civ. 5176, 2008 U.S. Dist. LEXIS 55058, at *50, 55 (S.D.N.Y. July 18, 2008) (denying summary judgment to defendant-employer with respect to plaintiff-employee's retaliation claims under § 1981 and Title VII where plaintiff was terminated three weeks after submitting oral complaint and one week after her written complaint).

**Proposed Jury Instruction No. 12 – Individual Liability of
Defendants Matsumoto and Tsukada Under Section 1981,
The NYSHRL and the NYCHRL**

Section 1981, the NYSHRL and the NYCHRL dictate that it is an unlawful

discriminatory practice for any person to discriminate against someone on the basis of their race

or national origin or to retaliate against someone for complaining about discrimination.  An

individual may be found liable under Section 1981, the NYSHRL and NYCHRL if that

individual engaged in discriminatory or retaliatory acts.  Mr. Schanfield claims that Defendant

Matsumoto and Defendant Tsukada are individually liable for race discrimination and retaliation

under Section 1981, the NYSHRL and the NYCHRL.

If you find that Mr. Schanfield has proven his claim of race/national origin

discrimination, or retaliation against Defendant Sojitz, you must then determine whether he has

proven by a preponderance of the evidence that Defendant Matsumoto and Defendant Tsukada

participated in conduct giving rise to that discrimination claim or retaliation claim in order to

find for Mr. Schanfield with respect to the individual liability of Defendants Matsumoto and

Defendant Tsukada.

However, if you find that Mr. Schanfield has not proven his claims against Sojitz for

retaliation, then you must find for the individual Defendants with respect to Mr. Schanfield's

claims against them for individual liability for unlawful discrimination or retaliation under

Section 1981, the NYSHRL or the NYCHRL.

Wills v. Key Food Stores Co-operative, Inc., No. 95 Civ. 5333, 1997 WL 168590, *6 (E.D.N.Y.
April 9, 1997) (corporate employee can be individually subject to suit for discrimination if he is
shown to have power to do more than carry out personnel decisions made by others (citing
Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984) (per curiam)); Dundas v. Convalescent
Hosp. for Children, No. 92 Civ. 6005L, 1995 WL 813721, *7 (W.D.N.Y. March 9, 1995) (New
York courts following Patrowich have interpreted it to mean that employee who *does* have power

to make personnel decisions can be held personally liable under Human Rights Law) (emphasis in original)).  Kato v. Ishihara, 239 F.Supp.2d 359, 365 (S.D.N.Y. 2002) (individual liable under NYCHRL and NYSHRL when plaintiff established that individual engaged in discriminatory acts); Prudent v. Caspi, 04 Civ. 00725 (RPP), 2004 WL 1907749 * 3 (S.D.N.Y. Aug. 25, 2004) (plaintiff may show that defendant engaged in discriminatory acts or conduct to find individual liability).

**Proposed Jury Instruction No. 13 – Aiding and Abetting**
**in Violation of the NYSHRL and the NYCHRL**

   Mr. Schanfield also alleges separate and distinct claims under the NYSHRL and the

NYCHRL for aiding and abetting.  Specifically, he alleges that, because Defendants Jun

Matsumoto and Takashi Tsukada actually participated in the discriminatory conduct and/or

retaliation that he allegedly suffered while employed by Sojitz, each is individually liable for

aiding and abetting such discriminatory/retaliatory conduct.  Mr. Schanfield cannot establish this

claim unless you have already determined that he suffered some form of employment

discrimination or retaliation in violation of the NYSHRL and the NYCHRL.  That underlying

discriminatory conduct can be a violation of any one of the previously alleged claims under the

NYSHRL or the NYCHRL (i.e., discrimination and/or retaliation).  If you have determined that

Mr. Schanfield was subject to some form of discrimination or retaliation and you then determine

that Defendants Jun Matsumoto and/or Takashi Tsukada actually participated in that conduct,

then you must find Defendants Jun Matsumoto and/or Takashi Tsukada individually liable for

aiding and abetting violations of the NYSHRL and the NYCHRL.

N.Y.Exec.Law § 296(6) (it shall be an unlawful discriminatory practice "for any person to aid,
abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt
to do so."); N.Y. City Admin. Code § 8-107(6) ("it shall be an unlawful discriminatory practice
for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under
this chapter, or attempt to do so"); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)
(under the aiding and abetting language of § 296(6) defendant who actually participates in
conduct giving rise to discrimination claim may be held personally liable, even if that defendant
has neither ownership interest nor the power to hire and fire);  see e.g., Dodson v. CBS
Broadcasting Inc., No. 02 Civ. 9270, 2004 WL 1336231, *27-8 (S.D.N.Y. June 15, 2004) (noting
individual defendants can be held personally liable and denying summary judgment on aiding
and abetting claim under §296(6) because material issues of fact exist as to the roles that certain
individual defendants played in the timing and decision to terminate plaintiff); Perks v. Town of
Huntington, 251 F. Supp.2d 1143, 1160-61 (E.D.N.Y. 2003) (holding individual defendant could
be held personally liable under aiding abetting theory of NYSHRL); Lewis v. Triborough Bridge
& Tunnel Auth., 77 F. Supp.2d 376, 379 n. 6 (S.D.N.Y. 1999) (genuine issues of material fact

precluded summary judgment on NYSHRL claims for aiding or abetting in discrimination); <u>Petrosky v. N.Y. State Dep't of Motor Vehicles</u>, 72 F. Supp.2d 39, 64-65 (N.D.N.Y. 1999) (in Title VII claim plaintiff-employee's co-workers could be held liable for discrimination under the NYSHRL as aiders or abettors).

**Proposed Jury Instruction No. 14 – Damages for Section 1981,**
**Title VII, the NYSHRL, and the NYCHRL – Four Different Types of Damages**

If you determine that the Defendants are liable for some or all of the various causes of action that Mr. Schanfield and the Class have alleged under Section 1981, Title VII, the NYSHRL or the NYCHRL, you must then determine the amount of damages to award him and/or the Class. Based on the various causes of action Mr. Schanfield has alleged, there are four potential types of damages you may award him and/or the Class:

(1) Economic Damages – These are the damages directly related to lost wages and other compensation that Mr. Schanfield and/or the Class may be entitled to recover. In determining economic damages, you will have to separately consider Back Pay Damages (damages up to the date of the trial) and Front Pay Damages (damages from the date of the trial going forward);

(2) Compensatory Damages – This type of damages provides an award to compensate Mr. Schanfield and/or the Class for pain and suffering, emotional distress, including feelings of depression, anxiety and/or humiliation, and/or harm to reputation that he may have suffered;

(3) Nominal Damages – These are damages, which are typically a minimal amount, awarded because a statute or law has been violated without any regard to the actual damages that Mr. Schanfield and/or the Class may have suffered as a result of that violation; and

(4) Punitive Damages – These are damages that you may award to punish Defendants for especially egregious conduct and to deter Defendants and others from engaging in similar conduct in the future.

Katt v. City of New York, 151 F. Supp.2d 313, 369 (S.D.N.Y. 2001) (calculation of damages is province of jury) (citing Ismail v. Cohen, 899 F.2d 183, 188 (2d Cir. 1996)); Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753, 2005 U.S. Dist. LEXIS 42001, at * 9-10 (S.D.N.Y. Dec. 15, 2005) ("An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory . . . damages.")(quotations omitted); Hill v. Airborne Freight Corp., 212 F. Supp. 2d 59, 74 (punitive damages may be recovered under Section 1981) (E.D.N.Y. July 17, 2002)

**Proposed Jury Instruction No. 15 – Economic Damages – Back Pay Damages**

If you determine that Mr. Schanfield and/or the Class was discriminated against, he and/or the Class may recover the wages and other benefits they would have earned if they had not been discriminated against and still worked at Sojitz. An award of back pay runs from the date of the discriminatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages

Mr. Schanfield is entitled to salary and benefits from the day his employment with Sojitz ended, May 31, 2007, through the date of judgment in this case ( ___, 2009). In other words, you must determine the total amount of compensation Mr. Schanfield would have earned between May 31, 2007 and today. You should also include any anticipated pay raises, step increases, cost of living increases, bonuses, fringe benefits and other compensation increases or payments necessary to make Mr. Schanfield whole in determining your total award of back pay damages.

The fact that Mr. Schanfield was paid to teach a course at NYU does not cut off his right to recover back pay damages because Mr. Schanfield's earnings at NYU pays him significantly less than what he earned at Sojitz. Mr. Schanfield's earnings at NYU are interim earnings, and will mitigate his overall recovery of back pay damages. This means that you must offset the earnings Mr. Schanfield made from NYU from the total calculation of what he would have earned if he had been employed at Sojitz through the date of judgment. In other words, simply subtract the total earnings Mr. Schanfield made at NYU in 2008 and the date of judgment in this case from any total back pay award you have calculated.

Mr. Schanfield seeks back pay damages based on the following separate and distinct causes of action she has alleged: (1) the unlawful termination of his employment due to

race/national origin discrimination, and (2) the unlawful termination of his employment due to

retaliation, and (3) claims that Defendant Matsumoto and Defendant Tsukada are individually

liable under the NYSHRL and the NYCHRL.  Accordingly, you must consider this instruction

when you ultimately determine whether to award back pay for each of these causes of action.

 With respect to the Class, it is entitled to compensation to make up for what they would

have been paid if they had been Japanese/Asian rotational staff.  This may also include

compensation as a result of unlawful termination motivated by discrimination from the day

employment with Sojitz ended, through the date of judgment in this case ( ___, 2009).  In other

words, you must determine the total amount of compensation Class members would have earned

if they were treated as equals to Japanese/Asian rotational staff.  You should also include any

anticipated pay raises, step increases, cost of living increases, bonuses, fringe benefits and other

compensation increases or payments necessary to make the Class whole in determining your

total award of back pay damages.

 The fact that members of the class have subsequent employment does not cut off Class

members' right to recover back pay damages.  Any such earnings are interim earnings, and will

mitigate the overall recovery of back pay damages.  This means that you must offset the earnings

members of the Class made from subsequent employment from the total calculation of what they

would have earned if they had been employed at Sojitz through the date of judgment.  In other

words, simply subtract the earnings from subsequent employment from any total back pay award

you have calculated.

Gatti v. Community Action Agency of Greene County, Inc., 263 F. Supp.2d 496 (N.D.N.Y.
2003) (plaintiff who has proven employment discrimination claim was entitled to back pay from
date of discharge until date of judgment); Taddeo v. Ruggiero Farenga, Inc., 102 F. Supp.2d 197,
198 (S.D.N.Y. 2000) (back pay encompasses time period between firing and court judgment,
offer of reinstatement, or better employment, but "interim" earnings, less than those previously
paid, are applied to mitigate continuing injury, however, if despite reasonable efforts plaintiff has

no earnings in that period, nothing mitigates his damages); Nordquist v. Uddeholm Corp., 615 F. Supp. 1191, 1204 (D.Conn. 1985) (back pay damages are calculated from date of termination to date of employment at equal or higher salary if plaintiff was fortunate enough to obtain such employment prior to date of trial); Alexandru v. Northeast Utilities Service Co., No. 3:95 Civ. 461, 1997 WL 766885, *7 (D.Conn. Dec. 3, 1997) (back pay award must be reduced by any interim earnings or amounts earnable with reasonable diligence by persons or persons discriminated against); Vernon v. Port Auth. of New York and New Jersey, No. 95 Civ. 4594, 2003 WL 1563219, *1 (S.D.N.Y. Mar. 26, 2003) (holding it was necessary to incorporate employer's merit and promotional increase policies during period at issue in calculating back pay award to employee and also including prejudgment interest on award of back pay damages); Epter v. New York City Transit Auth., 216 F. Supp.2d 131, 135 (E.D.N.Y. 2002) (unless it would result in highly speculative award, back pay usually "runs from the date of the discriminatory action to the date of the judgment, and should include any anticipatory raises, step increases, cost of living increases, and other increases necessary to make the plaintiff whole." (quoting EEOC v. Joint Apprenticeship Comm., 186 F.3d 110, 124 (2d Cir. 1999))); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (back pay award in Title VII case should include lost salary, including anticipated raises, and fringe benefits), cert. denied, 510 U.S. 1164 (1994).

**Proposed Jury Instruction No. 16 – Economic Damages – Front Pay Damages**

If you find that Mr. Schanfield and/or the Class will sustain economic damages in the future because of Defendants' discrimination, you may also award front pay damages. Front pay is separate and distinct from back pay. The purpose of front pay is to compensate an employee who has been discriminated against for any continuing harm caused by his employer's discrimination.

In calculating front pay, you must determine the total salary Mr. Schanfield and/or the Class would have received from the date of the verdict until the date they would have ended employment with Sojitz, if Defendants had not discriminated against them. In other words, you must determine how many years into the future that compensation should be awarded based on how long you believe Mr. Schanfield and/or members of the Class would have continued working at Sojitz, if Defendants had not discriminated against them. You should also include any anticipated pay raises, step increases, cost of living increases, bonuses, fringe benefits and other compensation increases or payments necessary to make Mr. Schanfield whole in determining your total award of front pay damages. You may consider the number of years between the verdict up to the anticipated date that Mr. Schanfield and/or members of the Class would be eligible for retirement.

Once you have determined the time frame for awarding front pay and what Mr. Schanfield would have earned from Sojitz during that period of time, you should consider any compensation Mr. Schanfield can be expected to earn from his present position with NYU or any other future employment, premised upon good faith attempts on Mr. Schanfield's part to maximize his income. Then subtract the amount which Mr. Schanfield can be expected to earn

at NYU or from other future employers, from the compensation he would have received if he remained employed at Sojitz. This amount represents the front pay damages that you can award.

Mr. Schanfield seeks front pay damages based on the following separate and distinct causes of action he has alleged: (1) adverse employment actions, the termination of his employment, based on unlawful race/national origin discrimination; (2) an adverse employment action, the termination of his employment, based on unlawful retaliation; and (3) claims that Defendants Matsumoto and Defendant Tsukada are individually liable under Section 1981, the NYSHRL and the NYCHRL. Accordingly, you must consider this instruction when you ultimately determine whether to award front pay for each of these causes of action.

With respect to front pay for the Class, once you have determined the time frame for awarding front pay and what members of the Class would have earned from Sojitz during that period of time, you should consider any compensation members of the Class can be expected to earn from present or future employment, premised upon good faith attempts on the part of members of the Class to maximize their income. Then subtract the amount which members of the Class can be expected to earn at present or future employment, from the compensation he would have received if they remained employed at Sojitz. This amount represents the front pay damages that you can award.

U.S. v. Burke, 504 U.S. 229, 229 n.9 (1992) (defining front pay as award for future lost earnings); Whittlesey v. Union Carbide Corp., 742 F.2d 724 (2d Cir. 1984) (holding district courts may, in appropriate circumstances, award front pay in employment discrimination cases as relief when plaintiff cannot be reinstated to his or her former position); Gatti v. Community Action Agency of Greene County, Inc., 263 F. Supp.2d 496, 507-514 (N.D.N.Y. 2003) (permitting district court to fashion equitable remedies which can include front pay for loss of future earnings and court may receive advisory verdict from jury on issue of front pay); Hogan v. General Elec. Co., 144 F. Supp.2d 138, 144 (N.D.N.Y. 2001) (adopting jury's advisory verdict regarding front pay). Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 964 (10th Cir. 2002) (front pay is intended to compensate for losses after trial); Tyler v. Bethlehem Steel Corp.,

958 F.2d 1176 (2d Cir. 1992) (award of $667,000 in front pay over work life estimated by economist to be 17 years did not shock conscience); Vernon v. Port Auth. of New York and New Jersey, No. 95 Civ. 4594, 2003 WL 1563219, *7 (S.D.N.Y. March 26, 2003) (front pay award calculated as ceasing when plaintiff is first eligible for retirement); (Ward v. New York City Transit Auth., No. 97 Civ. 8550, 1999 WL 446025, *8-9 (S.D.N.Y. June 28, 1999) (awarding 12 years of front pay was neither speculative nor unreasonable); Tanzini v. Marine Midland Bank, N.A., 978 F. Supp. 70, 81 (N.D.N.Y. 1997) (front pay awards always involve some degree of speculation and noting front pay award of up to 20 years may be proper).

**Proposed Jury Instruction No. 17 – Compensatory Damages**

Mr. Schanfield and the Class are also seeking compensatory damages based on the emotional pain and suffering, including feelings of depression, anxiety and/or humiliation, mental anguish, loss of life enjoyment and loss of reputation that he/the Class allege they suffered as a result of Defendants' conduct.  Compensatory damages are separate from back pay and front pay.  Accordingly, in order to receive compensatory damages, Mr. Schanfield and/or the Class must prove that they have suffered emotional distress as a result of being discriminated against by Defendants.  Mr. Schanfield can prove this through his own testimony.  The Class can prove this through affidavits.

Additionally, you can distinguish the level of emotional distress Mr. Schanfield and members of the Class may be feeling today from the levels of emotional distress they alleges they suffered during and in the period immediately following being discriminated against and otherwise mistreated by Defendants.  In other words, you can award compensatory damages based on severe emotional anguish Mr. Schanfield and/or members of the Class may have suffered immediately after any of Defendants' acts, even though they may not still be suffering at the same level today.

Mr. Schanfield seeks compensatory damages based on the following separate and distinct causes of action he has alleged: (1) an adverse employment action including, the termination of his employment, based on unlawful race/national origin discrimination; (2) an adverse employment action, the termination of his employment, based on unlawful retaliation; (3) claims that Defendant Matsumoto and Defendant Tuskada are individually liable under Section 1981, the NYSHRL and the NYCHRL.  Accordingly, you must consider this instruction when you ultimately determine whether to award compensatory damages for each of these causes of action.

Bick v. City of New York, No. 95 Civ. 8781, 1998 WL 190283, * 24-5 (S.D.N.Y. Apr. 21, 1998) (awarded damages for pain and suffering to victim of employment discrimination who proved compensatory damages though her own testimony and that of her therapist, which established thatt she suffered from severe emotional anguish for extended period although she had improved by time of trial).

**Proposed Jury Instruction No. 18 – Punitive Damages**

Mr. Schanfield and the Class are also seeking punitive damages.  Punitive damages are designed to punish especially egregious acts or violations of law and deter or discourage wrongdoers from engaging in similar conduct in the future.  You can determine that Mr. Schanfield and the Class are entitled to punitive damages if Mr. Schanfield demonstrates that Defendants engaged in discriminatory practices and retaliation with malice or with a reckless indifference to the rights of Mr. Schanfield and the Class.

For example, you may award punitive damages if you determine that Defendants knew they were violating antidiscrimination statutes and/or were recklessly indifferent to that fact. Accordingly, you may consider the fact that during the time period that Mr. Schanfield was employed with Sojitz and/or from October 1, 2004 to present, Defendants were aware of discriminatory conduct involving others as well, and were intentionally allowing it to continue, or recklessly indifferent to that fact.

Mr. Schanfield and the Class seek punitive damages under each of their claims under Section 1981 and Title VII based on alleged adverse employment actions, including lower compensation and denial of promotions, based on unlawful race/national origin discrimination.

Mr. Schanfield individually seeks punitive damages under each of his claims under Section 1981, Title VII and the NYCHRL based on the following separate and distinct causes of action he has alleged; (1) adverse employment actions including the termination of his employment based on unlawful race/national origin discrimination (2) an adverse employment action, the termination of Mr. Schanfield's employment, based on unlawful retaliation; and (3) claims that Defendant Matsumoto and Defendant Tsukada are individually liable under Section

1981 and the NYCHRL.  Accordingly, you must consider this instruction when you ultimately

determine whether to award punitive damages for each of these causes of action.

Kolstad v. American Dental Ass'n, 527 U.S. 526, 534-546 (1999) (discussing prerequisites to awarding punitive damages under Title VII); Cush-Crawford v. Adchem Corp., 271 F.3d 352, 357-59 (2d Cir. 2001)(same); Taylor v. Polygram Records, No. 94 Civ. 7689, 1999 U.S. Dist. LEXIS, at *71 (S.D.N.Y. Mar. 8, 1999) ("Punitive damages are available under . . . Section 1981 whenever a plaintiff proves that a defendant discriminates with malice or with reckless indifference to the [plaintiff's] federally protected rights.") (citing Luciano v. Olsten Corp., 110 F.3d 210, 219 (2d Cir. 1997) (internal quotations omitted)..

**Proposed Jury Instruction No. 19 – Mitigation of Damages**

Mr. Schanfield must make a reasonable effort to minimize or reduce his lost compensation damages by seeking other suitable employment. This is called mitigation of damages. On this issue, Defendants have the burden of proof. To meet their burden, Defendants must show that suitable work existed and that Mr. Schanfield did not make reasonable efforts to obtain it.

Therefore, if you determine that Mr. Schanfield is entitled to damages, you must reduce those damages by any amount that Defendants prove by a preponderance of the evidence Mr. Schanfield actually earned or could have earned through other suitable employment. Other suitable employment means that the job must be substantially equivalent to Mr. Schanfield's job at Sojitz. To be substantially similar, the new job must afford Mr. Schanfield virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as his position with Sojitz. To satisfy his duty to mitigate his damages, Mr. Schanfield is not obligated to go into another line of work, accept a demotion, or take a demeaning position.

If you determine that Mr. Schanfield made a reasonable effort to obtain other suitable employment, you should find that he has satisfied his obligation to mitigate his damages, and you should not limit his damages in any way. On the other hand, if you determine that Mr. Schanfield did not make a reasonable effort to obtain other suitable employment, you should find that he has not satisfied his obligation to mitigate his damages, and you may reduce his damages by the amount of compensation he could have earned had he made such an effort.

Ford Motor Co. v. EEOC, 458 U.S. 219, 230-241 (1982); Dailey v. Societe Generale, 108 F.3d 451, 455-6 (2d Cir. 1997); Shannon v. Fireman's Fund Ins. Co., 136 F. Supp.2d 225, 228-30 (S.D.N.Y. 2001).

**Proposed Jury Instruction No. 20- Breach of Contract**

Sojitz has alleged that Mr. Schanfield breached a contract by sending materials or information that it alleges are confidential to parties outside Sojitz.  Confidential information is sensitive information that is not known outside the Company.  It does not include publicly available information or information that is known by specialists in a particular field, such as internal auditing.

In order to prevail on this claim, Sojitz must show each of the following:

**First:**  That the letter from Sojitz offering Mr. Schanfield employment was a valid, enforceable contract.

**Second:**  That Sojitz fulfilled its obligations under the contract.

**Third:**  That Mr. Schanfield breached his obligations under the contract by sending outside the Company materials that you find to be confidential.

**Fourth:**  That Sojitz has suffered damages as a result of Mr. Schanfield's breach.

Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999); RIJ Pharm. Corp. v. Ivax Pharms., Inc., 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004); First Investors Corp. v. Liberty Mut. Ins. Corp., 152 F.3d 162, 168 (2d Cir. 1998)); Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520, 525 (2d Cir. 2004) "'one who violates his contract with another is liable for all the direct and proximate damages which result from the violation.'" (quoting Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 209, 4 N.E. 264 (1886)). Exxon Co. v. Sofec, Inc., 517 U.S. 830, 839-40, 135 L. Ed. 2d 113, 116 S. Ct. 1813 (1996) ("Although the principles of legal causation sometimes receive labels in contract analysis different from the 'proximate causation' label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well.")

**Proposed Jury Instruction No. 21 - Breach of Fiduciary Duty and Duty of Loyalty**

Sojitz alleges that Mr. Schanfield breached a fiduciary duty by sending allegedly confidential materials outside the Company.

In order to prevail on this claim, Sojitz must show each of the following:

**First:**  That Mr. Schanfield owed a fiduciary duty to Sojitz, because Sojitz invested trust in Mr. Schanfield and relied on him to give advice for Sojitz's benefit;

**Second**:  That Mr. Schanfield knowingly breached his duties to Sojitz; and

**Third:**  That Mr. Schanfield's breach caused Sojitz damage.

In the alternative, Sojitz alleges that Mr. Schanfield breached his duty of loyalty by allegedly sending confidential materials outside the Company.  In order to prevail on this claim, Sojitz must show each of the following:

**First:**  That Mr. Schanfield owed a duty of loyalty to Sojitz;

**Second:**  That Mr. Schanfield breached that duty of loyalty such that it impeded his ability to perform his job duties satisfactorily, unfairly competed with Sojitz, diverted Sojitz's business opportunities to himself or others to the financial detriment of Sojitz, or accepted improper kickbacks; and

**Third:**  That Sojitz was disadvantaged as a result of Mr. Schanfield's breach.

SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004) (the elements under New York law are "breach by a fiduciary of a duty owed to plaintiff, defendant's knowing participation in the breach; and damages.") (citing Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 281-82 (2d Cir. 1992)); LNC Invs., Inc. v. Charter Nat'l Life Ins. Co., 173 F.3d 454, 465 (2d Cir. 1999)(plaintiff must demonstrate that defendant's conduct proximately caused injury in order to establish liability) (citing R.M. Newell Co. v. Rice, 236 A.D.2d 843, 653 N.Y.S.2d 1004, 1005 (4th Dep't 1997)); Ross v. FSG PrivatAir, Inc. No. 03 Civ. 7292, 2004 U.S. Dist. LEXIS 16157, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004) (plaintiff must demonstrate that defendant was "under a duty to act for or to give advice for the benefit of

another upon matters within the scope of the relation.") (quoting <u>Calvin Klein Trademark Trust v. Wachner</u>, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000); <u>Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC</u>, 05 Civ. 9016 (SAS), 2009 U.S. Dist. LEXIS 206 (S.D.N.Y. Jan. 5, 2009); <u>Silipos, Inc. v. Bickel</u>, 06 Civ. 2205 (DFE), 2007 U.S. Dist. LEXIS 77924 at *26 (S.D.N.Y. Oct. 12, 2007); <u>Sanders v. Madison Square Garden, L.P.</u>, 06 Civ. 589 (GEL), 2007 U.S. Dist. LEXIS 48126 (S.D.N.Y. Jul. 2, 2007); <u>Sullivan & Cromwell LLP v. Charney</u>, No. 600333/2007, 2007 N.Y. Misc. LEXIS 2975 (N.Y. Sup. Ct. Apr. 30, 2007)

**Proposed Jury Instruction 22:  Misappropriation of Trade Secrets**

Sojitz has alleged that Mr. Schanfield misappropriated its trade secrets.  Trade secrets are defined as any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it.  Factors to consider when determining whether information constitutes a trade secret are:

(1) The extent to which the information is known outside of the business;

(2) the extent to which it is known by employees and others involved in the business;

(3) the extent of measures taken by the business to guard the secrecy of the information;

(4) the value of the information to the business and its competitors;

(5) the amount of effort or money expended by the business in developing the information, and

(6) the ease of difficulty with which the information could be properly acquired or duplicated by others.

In order to prevail in this claim, Sojitz must show each of the following:

**First:**  That Sojitz possessed trade secrets; and

**Second:**  That Mr. Schanfield owed Sojitz a duty or had an agreement; and

**Third:**  That Mr. Schanfield used Sojitz's trade secrets in breach of that duty or agreement.

Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992) (to establish a misappropriation of trade secrets claim under New York law, the plaintiff must demonstrate a breach of duty or agreement); Integrated Cash Management Services, Inc. v. Digital Transactions, 920 F.2d 171, 173 (2d Cir. 1990) (setting out the elements for a claim of misappropriation of trade secrets); Hudson Hotels Corp. v. Choice Hotels International, 995 F.2d 1173, 1176 (2d Cir. 1993) ( New York law states that a trade secret can be a "compilation of information which is used in one's business, and which gives [one the] opportunity to obtain an advantage over competitors who do not use it."); Softel, Inc. v. Dragon Med. & Scientific Communications, Inc., 118 F.3d 955, 968 (2d Cir. 1997) (same); North Atlantic Instruments, Inc.

v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (quoting § 757, comment b of the Restatement of Tort (1939)) (setting forth factors to consider in finding a trade secret).

**Jury Instruction No. 23:  Damages for Sojitz's Counterclaims**

If you determine that Mr. Schanfield is liable some or all of the counterclaims that Sojitz has alleged against him, you must then determine the amount of damages to award him.  Based on the causes of action that Sojitz has alleged, there are two potential types of damages you may award Sojitz:

(1) Compensatory Damages – These damages are directly caused to Sojitz as a result of Mr. Schanfield's purported misconduct – either breach of contract, breach of fiduciary duty or misappropriation of trade secrets.  Their purpose is to make Sojitz whole.

(2) Restitution Damages – These damages are warranted if you find that Mr. Schanfield breached a duty of loyalty to Sojtiz.  The purpose is to regain the value of the compensation and benefits paid to Mr. Schanfield by Sojitz or to take from Mr. Schanfield any profit he has gained by the use of Sojitz's information.

(3) Punitive Damages -- These are damages that you may award to punish Mr. Schanfield for misappropriation of trade secrets if you find that his conduct was especially egregious and to deter him and others from engaging in similar conduct in the future.

Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc., 392 F.3d 520, 525 (2d Cir. 2004); Vermont Microsys. v. Autodesk, Inc., 138 F.3d 449, 452 (2d Cir. 1998) ("The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses, or by the profits unjustly received by the defendant.") (internal citations omitted); A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) ("New York law apparently allows the recovery of punitive damages in a trade secrets case if the defendant's conduct has been sufficiently "gross and wanton."").

Dated: New York, New York
      January 30, 2009

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By:    _____
       Kenneth P. Thompson (KT-6026)
       Patricia E. Ronan (PR-0345)

85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 239-6845

Counsel for Plaintiff Arnold Schanfield
And Proposed Class Counsel