```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
ARNOLD SCHANFIELD, individually    : 07 Civ. 9716 (CM) (JCF)
and on behalf of others similarly  :
situated,                          :       MEMORANDUM
                                   :       AND   ORDER
              Plaintiff,           :
                                   :
     - against -                   :
                                   :
SOJITZ CORPORATION OF AMERICA; JUN :
MATSUMOTO in his official and      :
individual capacities; and         :
TAKASHI TSUKADA in his official    :
and individual capacities,         :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Sojitz Corporation of America ("SCA"), Jun Matsumoto, and Takashi Tsukda, the defendants in this employment discrimination suit, have moved to compel production of purportedly privileged documents withheld by the plaintiff, Arnold Schanfield. For the reasons that follow, the motion is granted with respect to certain documents but denied with respect to others.

Background

Mr. Schanfield served as SCA's Chief Internal Auditor from July 10, 2006 until May 21, 2007, when his employment was terminated. (Plaintiff/Counterclaim Defendant Arnold Schanfield's Concise Statement of Material Facts ("Pl. Facts"), ¶ 1; Defendants' Statement of Material Undisputed Facts Pursuant to Local Rule 56.1 ("Def. Facts"), ¶¶ 15, 67). On November 1, 2007, the plaintiff commenced this lawsuit on behalf of himself and a class of current

1

and former non-Japanese/non-Asian managerial employees of SCA. Mr. Schanfield maintains that SCA routinely engaged in a variety of discriminatory practices, systematically favoring Japanese and Asian employees and subjecting non-Japanese and non-Asian employees to disparate promotional opportunities, compensation, and other benefits. (Second Amended Complaint ("SAC"), ¶¶ 1, 12-32). Mr. Schanfield also alleges that SCA unlawfully retaliated against him. (SAC, ¶¶ 63-76). In response, defendant SCA asserted counterclaims against Mr. Schanfield for breach of his employment contract, misappropriation of trade secrets, and breach of fiduciary duties owed to SCA. (Answer and Counterclaims to the Second Amended Class Action Complaint ("Ans.") at 17-24). The defendants specifically contend that Mr. Schanfield improperly used and disclosed information contained in "highly sensitive and confidential" SCA documents; they allege further that Mr. Schanfield continues to refuse to return these documents to SCA. (Memorandum of Law in Support of Defendant Sojitz Corporation of America's Motion to Compel ("Def. Memo.") at 3; Ans. at 17-24). The parties have been enmeshed in discovery for over a year.

The instant dispute concerns documents from the plaintiff's personal computer. On August 29, 2008, I issued an order directing a third-party vendor to search Mr. Schanfield's computer using certain search terms agreed upon by counsel and to generate a report of electronically stored information containing these terms. (Order dated Aug. 29, 2008 at 1, 3). Within ten days of receiving this report, the plaintiff was to produce copies of all non-

2

privileged documents relevant to the defendants' counterclaims. (Order dated Aug. 29, 2008 at 2).[1] Since October 2008, however, the parties have disputed the scope of the plaintiff's production on the grounds of both relevance and privilege.

On January 22, 2009, I held a telephone conference with the parties in an attempt to resolve this issue. I then reviewed, <u>in camera</u>, twenty allegedly non-responsive and irrelevant documents withheld by the plaintiff and twenty documents that were produced to the defendants in redacted form. The redactions, according to the plaintiff, "were made on the basis of the work product protection and/or irrelevance." (Letter of Patricia E. Ronan dated Jan. 26, 2009). Thereafter, although I ordered the plaintiff to produce two of the redacted documents in un-redacted form, I found that otherwise the "plaintiff's redactions and determinations to withhold documents . . . are well-founded, primarily on the basis of relevance," and thus, "[n]o further review is warranted." (Order dated Jan. 28, 2009). As explained during the preceding telephone conference, however, this determination did not preclude the defendants from challenging the assertion of privilege with respect to other documents withheld.

The defendants filed the instant motion on January 30, 2009. They specifically identify thirty-six documents from the

---

[1] I reiterated this directive on November 6, 2008: "Plaintiff shall produce all non-privileged documents obtained through the forensic examination of his computer that are responsive to prior specific discovery requests (i.e., they are not necessarily relevant merely because they were located through the forensic search)." (Order dated Nov. 6, 2008, ¶ 5).

3

plaintiff's privilege log, arguing that these documents are not protected from disclosure and must be produced. (Reply Memorandum of Law in Support of Defendant Sojitz Corporation of America's Motion to Compel ("Def. Reply") at 6, 7, 9).[2] In response, the plaintiff maintains that these documents are in fact protected by the attorney-client privilege or the work product doctrine. (Memorandum of Law in Opposition to Defendant Sojitz's Motion to Compel and for Fees and Costs ("Pl. Memo.") at 10-12, 13-18, 18-20). Both parties seek costs and fees associated with this dispute. (Def. Memo. at 16-19, Pl. Memo. at 24-25).

I reviewed the thirty-six contested documents in camera in addition to considering each party's submissions on the matter.

Discussion

    A.    Attorney-Client Privilege and Work Product Doctrine

The traditional articulation of the attorney-client privilege is that:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997) (quotation marks and citation omitted); see also

---

[2] The defendants also argue that the plaintiff must provide a log accounting for some 1,200 documents withheld on grounds of relevance. (Def. Reply at 1). The Federal Rules of Civil Procedure do not require a log of non-responsive or irrelevant documents, nor have I ordered the plaintiff to create such a log.

Kingsway Financial Services, Inc. v. Pricewaterhous-Coopers LLP, No. 03 Civ. 5560, 2007 WL 473726, at *7 (S.D.N.Y. Feb. 14, 2007); In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 73-74 (S.D.N.Y. 2006); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995).[3] "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) (citations and internal quotation marks omitted); accord von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 523 (S.D.N.Y. 1992).  As the proponent of the attorney-client privilege in this case, the plaintiff therefore "has the burden of establishing the attorney-client relationship and the applicability of the privilege to the particular circumstances and discovery requests." P.& B. Marina, Ltd. Partnership v. Logrande, 136 F.R.D. 50, 53 (E.D.N.Y. 1991), aff'd, 983 F.2d 1047 (2d Cir. 1992).

The plaintiff likewise bears the "heavy burden" of establishing the applicability of the work product doctrine. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir.

---

[3] The test is sometimes truncated to three elements such that the party invoking the privilege must show "(1) a communication between client and counsel  that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice."  In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007)  (citing United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)).

2007). The work product doctrine, partially codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure, "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)); see also In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir. 1993) ("The logic behind the work product doctrine is that opposing counsel should not enjoy free access to an attorney's thought processes."). To warrant protection, a document or communication must have been prepared in anticipation of litigation by or for a party, or by his representative. Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 474 (S.D.N.Y. 2003). As explained by the Second Circuit, "documents should be deemed prepared 'in anticipation of litigation,' . . . if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Adlman, 134 F.3d at 1202 (quoting 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2024, at 343 (1994)) (emphasis omitted).

It is well-established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege. See United States v. Jacobs, 117 F.3d 82, 91 (2d. Cir. 1997); see also Kingsway Financial Services, 2007

WL 1837133, at *2 (collecting cases). Protection under the work product doctrine, however, is not automatically waived by a third party disclosure. Rather, work product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure "substantially increases the opportunity for potential adversaries to obtain the information." Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004) (quoting In Re Pfizer, Inc. Securities Litigation, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)). Protection is thus forfeited "when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary." Bank of America, N.A. v. Terra Nova Insurance Co., 212 F.R.D. 166, 170 (S.D.N.Y. 2002).

On the other hand, "courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." Merrill Lynch & Co., 229 F.R.D. at 446. In this circuit, the so-called "common interest" doctrine

> precludes a waiver of the underlying privilege concerning confidential communications between the parties "made in the course of an ongoing common enterprise and intended to further the enterprise," irrespective of whether an actual litigation is in progress. [United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)]; see Griffith v. Davis, 161 F.R.D. 687, 692 (C.D. Cal. 1995). Thus, the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy. See Bank Brussels Lambert[, 160 F.R.D. at 447].

7

Sokol v. Wyeth, Inc., No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). The common interest doctrine does not provide an independent source of protection from disclosure; it is inapplicable to documents not otherwise protected by the attorney-client privilege or work product doctrine. Id.

   B. The Thirty-Six Contested Documents

The defendants challenge three categories of e-mails that the plaintiff seeks to protect: communications (1) between Mr. Schanfield and his friend, Daniel Helming; (2) between Mr. Schanfield and three former colleagues at SCA; and (3) between Mr. Schanfield and three of his family members.

   1. Communications with Mr. Helming

The plaintiff claims that communications with Mr. Helming are protected by the work product doctrine.[4] (Pl. Memo. at 13). Specifically, the plaintiff contends that these e-mails contain "legal analysis" of Mr. Schanfield's claims, reflect "the direction of counsel," and were "prepared with this litigation in mind." (Pl. Memo. at 14; Privilege Log at 1-2). The plaintiff fails to provide any detail in support of his postition, however, and these documents on their face reflect no apparent legal analysis or case strategy. Indeed, the majority of these communications relate to the plaintiff's and Mr. Helming's job search process; there is only

---

   [4] Although the plaintiff's privilege log claims that these e-mails are also or alternatively protected by the attorney-client privilege (Plaintiff's Supplemental Privilege Log ("Privilege Log"), attached as Exh. A to Affirmation of Nicholas H. De Baun dated Feb. 20, 2009, at 1-2), there is no support for this claim either in the plaintiff's submissions or on the face of the documents.

8

one brief mention of the lawsuit and all of the information provided is public.  In sum, there is no indication that these e-mails were prepared in anticipated of litigation and entitled to protection from disclosure.  Accordingly, the plaintiff shall disclose the e-mails numbered 1 through 7 on his privilege log.[5]

### 2. Communications with SCA Employees

The second category of documents that the plaintiff seeks to protect are communications with John Vnuk, Toni Buono, and Asa McLoughlin, three of his former colleagues who are still employed by SCA.[6]  The e-mails in question were initiated by Mr. Schanfield and show his attempts to recruit these individuals as co-plaintiffs or as supportive witnesses.  The plaintiff argues that these communications are protected by the work product doctrine, and that the common interest doctrine precludes a determination that the communications' protected status has been waived.  (Pl. Memo. at 13-15, 15-17, 18-20).

Although the e-mails at issue arguably constitute work product, the plaintiff forfeited any protection he could have claimed by disclosing the material in a manner that was inconsistent with the doctrine's purpose.  Mr. Schanfield apparently assumed that Mr. Vnuk, Ms. Buono, and Mr. McLoughlin shared his opinion of SCA and would therefore keep his

---

[5] The numbers used in this opinion are those provided by the defendant on the privilege log attached to Mr. De Baun's affirmation.

[6] The plaintiff does not challenge the defendants' characterization of these individuals as current "SCA management employees."  (Def. Memo. at 15).

communications secret. It is simply common sense, however, that sending materials to employees of a corporation substantially increases the likelihood that such material will reach others within the corporation. Indeed, at least one of these contested communications -- an e-mail sent by Mr. Schanfield to Mr. McGloughlin on May 25, 2007 -- was in fact voluntarily disclosed to SCA's in-house counsel by the recipient. (Def. Memo. at 16). Mr. Schanfield does not allege that he had a prior confidentiality agreement with Mr. Vnuk, Ms. Buono, or Mr. McLoughlin. Nor does he provide other specific facts to show that he reasonably expected these e-mails to remain confidential. In sum, the plaintiff "used [work product materials] in such a way that they may end up in the hands of [his] adversary," thereby forfeiting his ability to protect the materials from disclosure. Bank of America, 212 F.R.D. at 170.

The plaintiff likewise fails to support his conclusory assertion that the common interest doctrine precludes a determination of waiver. Again, while Mr. Schanfield may have speculated that his former colleagues shared his interests in bringing suit against SCA, the e-mails with Mr. Vnuk, Ms. Buono, and Mr. McLoughlin simply do not provide facial support for this assumption. There is similarly no indication of "demonstrated cooperation in formulating a common legal strategy" between Mr. Schanfield and any of these individuals. Bank Brussels Lambert, 160 F.R.D. at 447. As any applicable work product protection has been forfeited, the plaintiff must disclose e-mails numbered 46,

60, 62, 89, 101, 102, 103, 104, 108, 109, 110, 111, 137, and 138.

### 3. Communications with Family Members

The final category of contested documents consists of several series of e-mails between Mr. Schanfield and two of his family members who are attorneys, Frances Schanfield and Michelle Stein.[7] Mr. Schanfield's sister Lillian Schanfield, who is apparently not a lawyer, is copied on most, if not all, of these e-mails.[8] The earliest set of e-mails was exchanged in May 2007. In these communications, Mr. Schanfield shares the underlying facts of his lawsuit and his initial ideas about legal strategy, and then seeks advice on the matter from his sisters and Ms. Stein.[9] In the next set of e-mails, also exchanged in May 2007, Mr. Schanfield asks his sister Frances and Ms. Stein for assistance with negotiating his engagement agreement with his current counsel, Thompson Wigdor & Gilly LLP.[10] Finally, in July and August of 2007, Mr. Schanfield sends drafts of a demand letter sent to SCA to both sisters and Ms. Stein, seeking their comments.[11]

The plaintiff argues that these e-mails are subject to the attorney-client privilege because they were "confidential and

---

[7] Frances Schanfield is the plaintiff's sister; Ms. Stein is identified only as a "relative." (Affirmation of Patricia E. Ronan dated Feb. 13, 2009, ¶ 23).

[8] It is clear from the face of most of these e-mails that Mr. Schanfield copied his non-lawyer sister, Lillian.

[9] These e-mails are numbered 19, 20, 22, 23, 36, 37, 39, 40, and 41.

[10] These are e-mails 24, 31, and 68.

[11] These are e-mails 21, 30, and 32.

explicitly for the purposes of procuring legal advice about his claims in this litigation and the retention of counsel." (Pl. Memo. at 12). Any attorney-client privilege Mr. Schanfield could claim for communications with his sister Frances and with Ms. Stein, however, was forfeited by disclosure to his sister Lillian. Cf. United States v. Stewart, 287 F. Supp. 2d 461, 464, 466 (S.D.N.Y. 2003) (finding waiver of privilege when defendant sent "clearly protected" material to "a nonlawyer family member whose interest in the case can only be described as personal"). These communications are thus not protected by the attorney-client privilege.

The plaintiff's claim that these e-mails constitute attorney work product is more substantial. Indeed, the substance of these documents, described above, includes material that was clearly prepared in anticipation of litigation by Mr. Schanfield or by his counsel. In addition, the plaintiff did not significantly increase the likelihood that SCA would obtain private information by sharing these materials with his two sisters and another close relative. Therefore e-mails numbered 19, 20, 21, 22, 23, 24, 30, 31, 32, 36, 37, 39, 40, 41, and 68 were properly withheld by the plaintiff under the work product doctrine. As the defendants have not demonstrated a "substantial need" for the protected information as required by Rule 26(b)(3)(A)(ii), these e-mails shall not be disclosed.

    C.    <u>Award of Costs and Fees</u>

Where a motion for an order compelling discovery is granted in

part and denied in part, the court may, "after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). The court, however, enjoys "broad discretion in determining appropriate Rule 37 sanctions" in light of its "firsthand familiarity with all of the pertinent circumstances of the particular case." JSC Foreign Economic Association Technostroyexport v. International Development & Trade Services, Inc., No. 03 Civ. 5562, 2005 WL 1958361, at *11 (S.D.N.Y. Aug. 16, 2005) (quoting 7 Moore's Federal Practice § 37.50 (3d ed. 2005) and collecting cases). Here, no apportionment is appropriate given the mixed results of the motion and the history of discovery disputes in which neither side has consistently prevailed. Both requests for costs and fees are therefore denied.

Conclusion

To summarize, the plaintiff shall disclose e-mails numbered 1, 2, 3, 4, 5, 6, 7, 46, 60, 62, 89, 101, 102, 103, 104, 108, 109, 110, 111, 137, and 138 on his privilege log. All other contested e-mails are protected by the work product doctrine and shall not be produced. Each party shall bear its own costs and fees associated with this motion.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         March 6, 2009

13

Copies mailed this date:

Kathryn J. Webber, Esq.
Patricia E. Ronan, Esq.
Gregory N. Filosa, Esq.
Kenneth P. Thompson, Esq.
Thompson Wigdor & Gilly LLP
85 Fifth Avenue, Fifth Floor
New York, New York 10003

Joanne Seltzer, Esq.
Laura H. Allen, Esq.
Nicholas H. De Baun, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019